**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Danny Lee KYLLO, Defendant–Appellant.**

**No. 93–30231.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 5, 1994.

Memorandum Filed June 14, 1994.

Memorandum Withdrawn Sept. 29, 1994.

Decided Oct. 4, 1994.

Kenneth Lerner, Asst. Federal Public Defender, Portland, OR, for defendant-appellant.

Robert Thomson, Asst. U.S. Atty., Portland, OR, for plaintiff-appellee.

Before: ALARCON, NORRIS, and LEAVY, Circuit Judges.

WILLIAM A. NORRIS, Circuit Judge:

Defendant–Appellant Danny Lee Kyllo was convicted on one count of manufacturing

marijuana in violation of 21 U.S.C. § 841(a)(1) and sentenced to 63 months. Before trial, Kyllo filed a motion to suppress all the evidence obtained in a search of his residence. The district court denied his motion. We vacate this conviction and remand for further proceedings.

## I

### Factual Background

In 1990, a law enforcement task force began investigating Sam Shook for the crime of conspiring to grow and distribute marijuana. In July 1991, four search warrants were issued and executed by the task force. As a result of evidence obtained from these searches, the task force began to focus on Sam Shook's daughter, Tova. On January 16, 1992, Special Agent Elliott took Sergeant Daniel Haas of the Oregon National Guard to the respective homes of Danny Kyllo and Tova Shook, where Haas used a thermal imaging device to detect the level of heat within the homes. Special Agent Elliott submitted an affidavit stating that the level of power usage at Kyllo's residence was indicative of drug manufacturing and that Kyllo's wife had been recently arrested for possession and delivery of a controlled substance. Based on this affidavit, a magistrate issued a warrant to search Kyllo's residence.

Upon execution of the search warrant at Kyllo's residence, law enforcement officers found an indoor marijuana grow involving more than one hundred marijuana plants. On February 20, 1992, a federal grand jury indicted Kyllo for the crime of manufacturing marijuana based on the evidence located in his residence.

Kyllo filed a motion to suppress evidence on two theories. First, he claimed that the affidavit filed to secure the search warrant manifested a reckless disregard for the truth by including false information about the power usage levels at his home, and by omitting material information about his marital status. Second, he claimed that the use of a thermal imaging device to gather information from his home constituted a "search", which was conducted without a warrant in violation of the Fourth Amendment. The district court granted Kyllo a hearing to determine the veracity of the statements made before the magistrate, but limited its scope to the question of whether the statements about power usage at Kyllo's residence that were used to obtain the search warrant were submitted with reckless disregard for the truth. After conducting this hearing, the district court rejected both of Kyllo's theories of suppression and denied the motion.

## II

### The Search Warrant

#### A. Power Usage

Kyllo claims that Special Agent Elliott made statements in his affidavit before the magistrate about the power usage at Kyllo's residence with reckless disregard for the truth. To establish probable cause, Special Agent Elliott stated in his affidavit that the electricity consumption at Kyllo's residence was indicative of a marijuana grow operation. He based his claim of overconsumption on a spreadsheet that lists average monthly electricity bills for single family homes as a function of residence size. It is undisputed, however, that Elliott's use of the spreadsheet was false and misleading.[1]

■ "A district court must suppress evidence seized under a warrant when an affiant has knowingly or recklessly included false information in the affidavit." *United States v. Dozier,* 844 F.2d 701, 705 (9th Cir.), *cert. denied,* 488 U.S. 927, 109 S.Ct. 312, 102 L.Ed.2d 331 (1988). In the absence of evidence that Elliott *knowingly* misused the spreadsheet, the issue is whether his mistakes constitute *reckless* or merely *negligent* disregard for the truth. *See United States v. Davis,* 714 F.2d 896 (9th Cir.1983). The district court found that Elliott did not act

---

1. He erroneously claimed that the spreadsheet was an *official* Portland General Electric Company document when it was not. He erroneously claimed that the spreadsheet listed "appropriate" or "maximum" power usage when it listed only "average" usage. Finally, he erroneously claimed that Kyllo was using too much electricity on the incorrect assumption that power consumption would decrease linearly with the square footage of the residence.

recklessly. We review the district court's finding that these statements were not made with reckless disregard for the truth under the clearly erroneous standard. *Dozier*, 844 F.2d at 705.

A comparison between the facts of this case and the facts of *Dozier* shows that the district court's finding in this case is not clearly erroneous. In *Dozier*, the affiant stated that the suspect had been convicted of multiple drug violations, when in fact, the suspect had been convicted of only one violation fifteen years ago as a juvenile, and that conviction had been set aside under state law. The affiant's explanation was that he did not know how to read the rap sheet correctly. The affiant also alleged that cars on the suspect's property belonged to certain persons although the affiant had earlier performed a DMV search that showed that the cars did not belong to those persons. *See Dozier*, 844 F.2d at 706. On these facts, we held that it was not clearly erroneous for the district court to find that the false statements arose from negligence rather than recklessness.

If the district court's finding based on the evidence in *Dozier* was not clearly erroneous, then neither was the court's finding in this case. Here, Elliott relied on a spreadsheet he received from the head of the Regional Crime Narcotics Enforcement Team, who in turn received it unofficially from a PGE employee. In addition, Elliott had used the spreadsheet "in a number of prior cases to successfully predict" marijuana grow operations. *See id.* In light of these facts, it was not clearly erroneous for the district court to find that the mistakes Elliott made in characterizing and applying the chart did not rise to the level of *reckless* disregard for the truth.

*B. Marital Status*

Kyllo claims that the district court erred in refusing to hold a *Franks* hearing on the issue of whether Special Agent Elliott omitted statements about Kyllo's marital status with reckless disregard for the truth. In his affidavit, Elliott stated:

Det. Dorman told me that he was aware that on 12–06–90, Danny Kyllo's wife, Luanne Kyllo, was arrested for delivery and possession of a controlled substance. A check with DMV revealed that Danny Kyllo and Luanne Kyllo had a 1972 Datsun ... which was registered at [Danny Kyllo's address].

E.R. at 51. While no statement in this paragraph is false, Elliott omitted the following uncontested facts: at the time of Luanne Kyllo's arrest, Luanne was separated from Danny Kyllo; she was living in a different state, California; and, she was using her maiden name. Although these facts appear in Detective Dorman's police report, Elliott did not examine the report itself and simply relied on Dorman's oral recounting of the facts.

Kyllo argued to the district court that Elliott's failure to check Dorman's report reveals a reckless disregard for the truth. Kyllo requested that this issue be considered in the district court's *Franks* hearing, but the court refused. *See Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). We review *de novo*. *See United States v. Homick*, 964 F.2d 899, 904 (9th Cir.1992).

■ To be entitled to a *Franks* hearing on this issue, Kyllo must first make a substantial preliminary showing that the affidavit contained a misleading omission and that the omission resulted from a deliberate or reckless disregard of the truth. Second, he must demonstrate that had there been no omission, the affidavit would have been insufficient to establish probable cause. *See United States v. Chesher*, 678 F.2d 1353, 1360 (9th Cir.1982).

■ First, Kyllo has made the required substantial preliminary showing. Three facts regarding Luanne and Danny Kyllo's marital status were omitted from the affidavit. These omissions were material since these facts would have substantially undermined any inference that Danny Kyllo was involved with drugs because his wife was. Furthermore, the fact that Elliott relied on information received from another law enforcement officer does not *ipso facto* mean that Elliott's omissions were not reckless.

*See United States v. Roberts,* 747 F.2d 537, 546 n. 10 (9th Cir.1984).

Our opinion in *United States v. Chesher,* 678 F.2d 1353 (9th Cir.1982), is instructive. In *Chesher,* the affiant spoke several times with another police officer who had prepared a report indicating that Chesher was no longer a member of the Hell's Angels. Despite the existence of this report and affiant's conversations with the author of the report, the affiant informed a magistrate that Chesher was a member of the Hell's Angels in order to secure a search warrant. We reversed the district court's decision not to hold a *Franks* hearing and stated that Chesher had satisfied the requirement of a substantial preliminary showing. *See id.* at 1362. We added:

> Clear proof is not required—for it is at the evidentiary hearing itself that the defendant, aided by live testimony and cross-examination, must prove actual recklessness or deliberate falsity.

*Id.* As did Chesher, Kyllo has made a sufficient preliminary showing to warrant a *Franks* hearing on this issue.

Second, Kyllo has shown that he was prejudiced by this omission. If material facts about Kyllo's marital status had not been omitted, the information about the wife's arrest would have been neutralized. That would have left in the affidavit three principal factual allegations: 1) Kyllo's electric power consumption was abnormally high; 2) Kyllo's residence emitted heat patterns indicative of a marijuana grow operation; 3) Kyllo once sold marijuana.

As discussed above, the first allegation was false; therefore, we will disregard it in our prejudice inquiry. As we discuss below, the record does not contain sufficient facts for us to determine whether the use of a thermal imaging device constitutes a search under the Fourth Amendment. For that reason, in determining the prejudicial effect of the omission in the search warrant of relevant facts concerning Luanne Kyllo, we will disregard the allegation in the affidavit concerning

the heat emitted from Kyllo's residence. What is left in the affidavit, then, is the third allegation,[2] which is hearsay many times over: Elliott heard it from a detective who heard it from another detective who heard it from an informant who overheard Kyllo's offer to sell drugs. Moreover, the information was stale. This third factual allegation, the only one left in the affidavit to consider, would fail to establish probable cause by itself. Accordingly, Kyllo has demonstrated prejudice.

Because Kyllo satisfied the two prongs required to entitle him to a *Franks* hearing, the district court erred in refusing to consider his claim that the affiant recklessly omitted material information about his marital relationship. We therefore remand this issue for a *Franks* hearing.

### III

### Thermal Imaging Device

■ Without a warrant, law enforcement officers used a thermal imaging device to scan Kyllo's residence. Kyllo claims that the use of a thermal imaging device constitutes a "search" within the meaning of the Fourth Amendment, and that the fruits of this warrantless search must be suppressed.

In order to determine whether the scan constituted a "search" for purposes of the Fourth Amendment, we must decide whether Kyllo exhibited an actual expectation of privacy and whether that expectation is one that society is prepared to acknowledge as reasonable. *See California v. Ciraolo,* 476 U.S. 207, 211, 106 S.Ct. 1809, 1811–12, 90 L.Ed.2d 210 (1986). But this inquiry cannot be conducted in the abstract. We must have some factual basis for gauging the intrusiveness of the thermal imaging device, which depends on the quality and the degree of detail of information that it can glean. For example, our analysis will be affected by whether, on the one extreme, this device can detect sexual activity in the bedroom, as Kyllo's expert

---

**2.** Det. Nafziger told me he contacted Detective Plaseter of the Brookings Police Department who told him that he had a CRI who told him that in late 1989, or early 1990 he was told by this CRI that the CRI overheard a conversation between

Danny Kyllo and another unknown person indicating that Danny Kyllo had marijuana for sale. . . .

E.R. at 52.

suggests, or, at the other extreme, whether it can only detect hot spots where heat is escaping from a structure.[3]

The district court, however, held no evidentiary hearing and made no findings regarding the technological capabilities of the thermal imaging device used in this case. In particular, the court made no findings on the device's ability to detect the shapes of heat-emitting objects inside a home. Without explicit findings, we are ill-equipped to determine whether the use of the thermal imaging device constituted a search within the meaning of the Fourth Amendment. Accordingly, we remand to the district court for findings on the technological capacities of the thermal imaging device used in this case.

## IV

### Sentence Enhancement

 Finally, Kyllo claims that the district erred in increasing his base offense level for possession of a firearm. "[I]n applying § 2D1.1(b)(1) the court need not find a *connection* between the firearm and the offense. If it finds that the defendant *possessed* the weapon during the commission of the offense, the enhancement is appropriate." *United States v. Restrepo,* 884 F.2d 1294, 1296 (9th Cir.1989). In other words, an enhancement pursuant to U.S.S.G. § 2D1.1(b)(2) may be applied as long as the "weapon was present" unless it is "clearly improbable that the weapon was connected with the offense." *United States v. Willard,* 919 F.2d 606, 609 (9th Cir.1990), *cert. denied,* — U.S. —, 112 S.Ct. 208, 116 L.Ed.2d 167 (1991).

 It is undisputed that two guns were present in the same residence as the grow operation. *See United States v. Gillock,* 886 F.2d 220, 223 (9th Cir.1989) (possessing gun in close proximity to drugs is sufficient for firearm enhancement). Furthermore, weighing all the evidence, the district court determined that the enhancement was appropriate

and impliedly found that it was not clearly improbable that the guns were connected with the marijuana grow operation. Because this finding is not clearly erroneous, *see United States v. Palmer,* 946 F.2d 97 (9th Cir.1991), the sentence enhancement was appropriate.

The conviction is VACATED and the case is REMANDED for the purposes of a *Franks* hearing on the marital status issue and an evidentiary hearing on the intrusiveness of the thermal imaging device. The district court's order denying the motion to suppress is otherwise AFFIRMED.

---

**3.** *Cf. Dow Chemical Co. v. United States,* 476 U.S. 227, 238, 106 S.Ct. 1819, 1826–27, 90 L.Ed.2d 226 (1986) ("It may well be … that surveillance of private property by using *highly sophisticated surveillance equipment not generally available to the public,* such as satellite technology, might be constitutionally prescribed absent a warrant.

But the photographs here are *not so revealing of intimate details* as to raise constitutional concerns. Although they undoubtedly give EPA more detailed information than naked-eye views, they remain *limited to an outline of the facility's buildings* and equipment.") (emphasis added).