**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Richard LABANSAT, Defendant–
Appellant.**

No. 95–50344.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 7, 1996.

Decided Aug. 8, 1996.

Sandra G. Moses (argued), David P. Curnow (on the brief), Assistant United States Attorneys, San Diego, California, for plaintiff-appellee.

Robert L. Swain, San Diego, California, for defendant-appellant.

Before WIGGINS, THOMPSON and TROTT, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Richard Labansat appeals his conviction on two counts of unarmed bank robbery in violation of 18 U.S.C. § 2113(a). Labansat contends the district court erred by denying his application for funds to hire an eyewitness identification expert, admitting evidence that he possessed drugs at the time of his arrest, and failing to give a requested jury instruction on eyewitness identification. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291, and we affirm.

## I

On November 12, 1993, a La Mesa branch of the Bank of America was robbed by a man wearing a wig, hat and sunglasses. Four days later, a La Mesa branch of the Wells Fargo Bank was robbed by a man wearing sunglasses and leather gloves with knuckle holes. Both robberies occurred during business hours and were witnessed by bank tellers and customers. Surveillance cameras captured both robberies on film.

Immediately before the Wells Fargo robbery, a bank customer saw two suspicious individuals in an automobile parked outside of the bank, wrote down the license number of their car, and reported her observations to a bank teller. The license number was subsequently supplied to the Federal Bureau of Investigation (FBI).

On November 20, 1993, a California Highway Patrolman stopped Labansat driving an automobile with the same license number supplied to the FBI by the Wells Fargo customer. The patrolman found in Labansat's vehicle a small bag of marijuana and leather gloves matching the gloves worn by the Wells Fargo robber. Upon searching Labansat, the patrolman discovered a small pouch in one of Labansat's socks in which cocaine and heroin were hidden.

After several witnesses identified his picture in photographic lineups, Labansat was indicted for both robberies and, as an indigent defendant, provided with court-appointed counsel.

Labansat filed three pretrial motions for funding of an eyewitness identification expert under 18 U.S.C. § 3006A(e)(1), arguing that such an expert would expose the weaknesses in the testimony of the eyewitnesses who identified him. The district court denied each of these requests.

During trial, bank tellers and customers who witnessed the bank robberies identified Labansat as the culprit. In addition, Labansat's sister was called to testify. She identified him as the man depicted on film from the bank surveillance cameras shown robbing the banks. The jury heard testimony that Labansat's automobile was seen at the Wells Fargo bank just prior to the robbery. The government also introduced into evidence the leather gloves with knuckle holes found in Labansat's car, which gloves matched those worn by the Wells Fargo robber.

The government elicited the testimony of the highway patrolman who arrested Labansat. The patrolman testified he found marijuana, cocaine, and heroin in Labansat's possession at the time of his arrest. During closing argument, the government used this evidence to argue that Labansat's motive for the two robberies was to obtain money to buy drugs. At no time did Labansat object to the evidence of his drug possession.

Labansat requested the district court to give the jury an instruction created by the Michigan State Bar in 1977 regarding the potential unreliability of eyewitness identification. The court rejected the requested instruction and instead gave the jury standard Ninth Circuit jury instructions about the elements of the charged crimes, the government's burden of proof, and the credibility of witnesses.

The jury convicted Labansat on all counts and this appeal followed.

## II

Labansat argues the district court erred by denying his requests for public funds to hire an expert on eyewitness identification

under 18 U.S.C. § 3006A(e)(1), by admitting evidence of his drug possession to show motive under Federal Rule of Evidence 404(b), and by failing to give his requested jury instruction on eyewitness identification. We consider each argument in turn.

## A

We review for abuse of discretion the district court's denial of Labansat's request for public funds to hire an expert on eyewitness identification under 18 U.S.C. § 3006A(e)(1). *United States v. Smith*, 893 F.2d 1573, 1580 (9th Cir.1990). Labansat must show that the lack of an expert deprived him of effective assistance of counsel. *Id.* He must demonstrate both that reasonably competent counsel would have required the assistance of the requested expert for a paying client, and that he was prejudiced by the lack of expert assistance. *United States v. Brewer*, 783 F.2d 841, 842–43 (9th Cir.), *cert. denied*, 479 U.S. 831, 107 S.Ct. 118, 93 L.Ed.2d 64 (1986). Prejudice must be shown by clear and convincing evidence. *Id.* at 843.

It is unlikely a reasonably competent attorney would have incurred the expense of hiring an eyewitness identification expert to assist Labansat's defense. As we have previously explained, "[t]he admissibility of this type of expert testimony is strongly disfavored by most courts." *United States v. Sims*, 617 F.2d 1371, 1375 (9th Cir.1980). Any weaknesses in eyewitness identification testimony can ordinarily be revealed by counsel's careful cross-examination of the eyewitnesses. *Brewer*, 783 F.2d at 842. This was the situation here. The principal challenge to the eyewitnesses' identification was the contention that their identifications were unreliable because they were not made until several months after the robberies. It is common knowledge that memory fades with time. Counsel can easily expose through cross-examination and closing argument the unreliability, if any, of delayed eyewitness identifications.

Moreover, Labansat has not shown by clear and convincing evidence that he was prejudiced by the lack of expert assistance. Not only were there numerous witnesses who identified Labansat as the bank robber, La-

bansat's vehicle was at the scene of the Wells Fargo robbery and gloves matching those worn by the bank robber were found in his possession. In addition, the jury was able to view bank surveillance photographs of the bank robber. Finally, Labansat's own sister unequivocally identified him as the person captured on film by the surveillance cameras.

In light of the overwhelming evidence of Labansat's guilt, it is far from clear, indeed unlikely, that an eyewitness identification expert would have affected the jury's verdict. We hold the district court did not abuse its discretion in denying Labansat public funds to hire an eyewitness identification expert.

## B

Labansat also argues the district court erred in admitting into evidence testimony by the highway patrolman who arrested him that marijuana, cocaine and heroin were found in his automobile and sock. The government used this "other acts" evidence to establish Labansat's motive for committing the robberies. *See* Fed.R.Evid. 404(b).

Because Labansat failed to object to this evidence, our review is for "plain error" under Federal Rule of Criminal Procedure 52(b). Under this standard, "[t]here must be an error that is plain and that affects substantial rights. Moreover, Rule 52(b) leaves the decision to correct the forfeited error within the sound discretion of the court of appeals, and the court should not exercise that discretion unless the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993) (internal quotations omitted).

We first consider whether any error occurred by the admission of evidence of Labansat's drug possession to show a motive to rob the banks. We conclude such error did occur. Although we have previously held the government can use evidence of a defendant's drug addiction or habit to show a financial motive to rob a bank, *see United States v. Miranda*, 986 F.2d 1283, 1285 (9th Cir.), *cert. denied*, 508 U.S. 929, 113 S.Ct.

2393, 124 L.Ed.2d 295 (1993); *United States v. Saniti,* 604 F.2d 603, 604 (9th Cir.), *cert. denied,* 444 U.S. 969, 100 S.Ct. 461, 62 L.Ed.2d 384 (1979), here there was no evidence presented to the jury that Labansat was addicted to or habitually used drugs.[1] The only evidence pertaining to drugs was that Labansat possessed marijuana, cocaine and heroin when he was arrested. This alone is insufficient to support an inference of financial need to establish a motive to rob a bank. Many defendants who possess drugs are dealers whose very possession of drugs diminishes, not enhances, any potential financial need to rob a bank.

■ The error in admitting the drug possession evidence, however, was not "plain error." There was no law in our circuit on this point at the time of Labansat's trial and our precedents allowing evidence of drug *addiction* to show motive in bank robbery cases may have led the district court to conclude that it was proper to admit the evidence of drug *possession* in this case.

Alternatively, even if the error in the admission of this evidence was "plain" and if we were to assume Labansat's "substantial rights" were affected by its admission, we would still refuse to exercise our discretion under Rule 52(b) to overturn Labansat's convictions because the error did not seriously affect the fairness, integrity, or public reputation of his trial. *Olano,* 507 U.S. at 732, 113 S.Ct. at 1776. As we stated earlier, the evidence of Labansat's guilt was overwhelming. Moreover, the evidence of his drug possession was neither exaggerated nor made the focus of the government's case. A single witness, the highway patrolman who arrested him, testified briefly about the drugs found in Labansat's possession and the government only mentioned the evidence once in closing argument. *Cf. Madden,* 38 F.3d at 753–54 (government's "repeated," "clear," and "heavy emphasis" of accused's drug use in closing argument without corre-

sponding reference to motive required vacation of conviction).

## C

■ Finally, Labansat argues the district court erroneously rejected his proposed jury instruction on the reliability of eyewitness identification. We review de novo, and in their entirety, the jury instructions given by the district court to determine whether they adequately covered the defense theory. *United States v. Duran,* 59 F.3d 938, 941 (9th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 535, 133 L.Ed.2d 440 (1995).

Labansat's defense theory was mistaken identity. We have previously held, with respect to the defense of mistaken identity, that the district court need not give a specific instruction on the reliability of eyewitness identifications. *Miranda,* 986 F.2d at 1285–86. We explained that "general instructions on the jury's duty to determine the credibility of the witnesses and the burden of proof are fully adequate." *Id.* at 1286.

The general instructions given by the court adequately covered Labansat's theory of defense. Accordingly, we hold the district court did not err by rejecting Labansat's proposed jury instruction on the reliability of eyewitness identification.

AFFIRMED.

---

1. Because the government presented no evidence of Labansat's use of drugs, we need not decide whether drug use, without more, would be sufficient to establish a motive to rob a bank. *Cf. United States v. Madden,* 38 F.3d 747, 751–52 (4th Cir.1994) ("[I]t is not the drug use *per se* that supports the underlying inference of financial need that makes the evidence relevant ..., but rather a demonstration by the government both that the accused has a significant drug habit or addiction and that he did not have the financial means to support it.... [F]inancial need is the key element to establish motive.").