**UNITED STATES of America, Plaintiff,**

v.

**Robert Elzay DEPEW, Defendant.**

**No. CR 97–072–M–DWM.**

United States District Court,
D. Montana,
Missoula Division.

Jan. 28, 1998.

Laurence J. Ginnings, Ginnings Law Office, Missoula, MT, for Defendant.

Kris A. McLean, Office of the U.S. Attorney, Missoula, MT, for Plaintiff.

## OPINION AND ORDER

MOLLOY, District Judge.

### I. Background

Depew is charged with illegally growing marijuana. Grow operations were found at two properties rented by Depew in the vicinity of Polson, Montana. Depew challenges the validity of the search warrants executed at the two properties. He claims that because he was not given a *Miranda* warning before he made inculpatory statements at the time of his arrest, the admissions should also be suppressed.

A suppression hearing on the matter was held on January 14, 1998. The evidence showed that Drug Enforcement (DEA) Agent Hicks served an administrative subpoena upon PAC Corp. on October 6, 1997. The subpoena ordered the power company to furnish "usage amounts per month, person billed for services, and credit information to include DOB, SSN if available for person billed for the address from January 1994 to present: 17680 East Shore Drive, Yellow Bay, Mt." Gov. Ex. 3. The subpoena also stated: "It is requested that PAC Corp determine if power is being diverted at the meter for this address." *Id.*

PAC asked for law enforcement protection to accompany its employee on to defendant's property where the power meter was located. Montana State Narcotic Agent Hayes then went with the PAC employee to inspect the meter to elicit evidence about defendant's

power diversion. The meter was located on the curtilage of the rental house.

I am troubled by the Fourth Amendment implications of the above-described use of administrative subpoena powers. The parties were asked to file supplemental briefing on the issue by noon on January 16, 1998. I have reviewed the supplemental briefing and I am prepared to rule. Even if the law favors the suppression of the evidence ostensibly illegally procured by the administrative subpoena, examination of the search application without that information still establishes probable cause. The motion to suppress is not well taken

## II. Discussion

### A. Prior Arrest

Depew was arrested and convicted on a marijuana grow in Idaho. The conviction was overturned by the Ninth Circuit because the affidavit by DEA Agent Trout supporting the search warrant was insufficient to establish probable cause. *United States v. Depew*, 8 F.3d 1424, 1429 (9th Cir.1993). Depew now argues that the information supplied by Agent Trout to Montana law enforcement in this case, and contained in affidavits by Agent Hayes and Agent Hicks supporting the search warrants at issue, should be suppressed as "fruit of the poisonous tree." The questioned information involved an anonymous telephone tip that Depew was living in a location identified by a phone number, and still involved in marijuana grow operations.

The government concedes that Agents Hayes' and Hicks' affidavits may include information obtained illegally in the prior *Depew* case. I agree with the government's concession and with its identification of the offending passages.

■ Nonetheless, the warrants may still stand if the supporting affidavits establish probable cause with the offending passages excised. *United States v. Smith*, 790 F.2d 789, 792 (9th Cir.1986) ("validity of a warrant and search depends on whether the untainted information, considered by itself, establishes probable cause for the warrant to issue").

Here, probable cause exists without the tip information supplied by Agent Trout. Much of the information supplied by Trout is available because of his "training, education, experience, and investigation of marijuana grow operations." *See* Hicks' Aff. at ¶ 2. Additionally, Hicks avers that marijuana growers typically black out or cover windows to prevent detection, consume large amounts of power, and divert electric power to conceal the large amounts of power used. *See* Hicks' Aff. at ¶ 2(m)–(n)(i) & (v).

I find the search warrants support a finding of probable cause even with the allegedly unlawful information supplied by Agent Trout excised from the affidavits.

### B. Use of Thermal Imager

■ Depew next argues that the warrantless use of a thermal imager to map the heat emissions from the property at 17680 East Lake Shore Drive, Yellow Bay, Montana, constitutes an illegal search under the Fourth Amendment. Under Montana law, the warrantless use of a thermal imager violates the right of privacy protected under Article II, Section 10 of Montana's Constitution. *State v. Siegal*, 281 Mont. 250, 934 P.2d 176, 192 (1997). While the result would be different if Montana was the enforcing jurisdiction, unfortunately for Depew, it is not.

■ The constitutionality of the search is determined by federal, not state, law. *See United States v. Brady*, 993 F.2d 177, 179 (9th Cir.1993) ("Admissibility of ... evidence in federal court is to be decided by federal law. State law is irrelevant."). The dispositive case in this Ninth Circuit is *United States v. Kyllo*, 37 F.3d 526 (9th Cir.1994).

Kyllo argued that use of a thermal imaging device to obtain evidence constitutes a "search" within the meaning of the Fourth Amendment. On that basis he argued its warrantless use was grounds for suppressing the evidence seized. Judge Norris, writing for the court, felt the issue could not be decided in the abstract. *Id.* at 530. The inquiry hinges on the intrusiveness of the thermal device: A device able to detect "sexual activity in the bedroom" intrudes upon an expectation of privacy that society recognizes

as reasonable. *Id.* On the other hand, there is no protected privacy interest if the device could only detect "hot spots where heat is escaping from a structure." *Id.* at 531.

■ The *Kyllo* court did not decide the issue because there were no explicit findings on the capabilities of the imager in question. The import of *Kyllo* is that use of a thermal imager does not constitute a search if the capabilities of the imager are limited to mapping images of hot spots. Unlike Montana, under the Fourth Amendment, Federal law does not recognize the more protective expectation of privacy guaranteed by the Article II, Section 10 of the Montana Constitution. The use of a thermal imagery device to gather evidence is not a *per se* violation of the Fourth Amendment.

■ The device used in this case, an Agema Therma Vision 210, is non-intrusive. It detects differences in temperatures of the object under observation. The device does not emit beams or rays of any sort into a residence. The device maps temperatures on the surface of an object—the warmer a surface is, the whiter the image shown on the resulting video image. The cooler the surface is, the darker the image. The Agema device cannot detect moving objects inside a residence. Before the machine could detect a human figure, the person would literally have to press against a window and remain situated for some time.

The thermal videotape in this case, revealed nothing inside defendant's house. No interior walls, doors or objects could be seen. The videotape of the north end of the building showed the outline of the wall studs and supporting cross-beams. The outline of the wall studs is visible because the heat source in the room was so hot that the wall studs were absorbing and releasing heat at a different rate to the other wall surfaces, and the imager mapped those temperature differences.

Based on the testimony of Agent Hicks, and upon my own viewing of the thermal videotape of defendant's property, I find that the Agema Therma Vision 210 does not have the technical capacity to invade Depew's expectation of privacy while in his house. As a consequence, its use does not violate the Fourth Amendment.

### C. Miranda Warnings

Depew made inculpatory remarks at the time of his arrest. He claims they were made without the benefit of *Miranda* warnings while he was in custody. Now, he wants his acknowledgements of guilt suppressed.

Depew was arrested and advised of his *Miranda* rights in the presence of two other agents according to Agent Hayes. I find Hayes' testimony is credible. He testified that he approached defendant's car after Depew was told by another officer to get out on the passenger side. Depew then asked Agent Hayes how he had been caught. Before answering, Hayes advised defendant of his *Miranda* rights. Depew then freely engaged in admitting his wrong doing.

■ The government must prove by a preponderance of the evidence that *Miranda* rights were administered. *Colorado v. Connelly,* 479 U.S. 157, 168, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). I find that the circumstances of Depew's arrest were as Agent Hayes testified. This being so, the government proved its claim of voluntariness. *See United States v. Huynh,* 60 F.3d 1386, 1388 n. 1 (9th Cir.1995). I also find it anomalous that Depew would not appreciate his constitutional rights having his past experiences litigated, and his rights explained to him here.

### D. Administrative Subpoena

The administrative subpoena questioned here was issued pursuant to 21 U.S.C. § 876. The law provides:

> In any investigation relating to his functions under this subchapter with respect to controlled substances ... the Attorney General may subpena witnesses, *compel the attendance and testimony* of witnesses, and *require the production of any records* ... which the Attorney General finds relevant or material to the investigation.

*Id.* (Emphasis added).

■ On its face, the statute does not contemplate the activity requested in the sub-

poena here. By asking that the power company determine if power was being diverted at the meter at defendant's home, the subpoena takes on an investigative function. This is especially so, where, as here, a law enforcement officer accompanied the power company employee on its mission to gather evidence. The parties agree the meter is within the curtilage of the house. Depew had an actual and justifiable privacy interest in the curtilage of his home. *United States v. Gorman,* 104 F.3d 272, 274 (9th Cir.1996) ("For the purposes of the Fourth Amendment, curtilage is important because it extends to a larger area the right to privacy a person enjoys inside the home.")

█ In this case, a law officer entered the curtilage of defendant's home under the auspices of an administrative subpoena looking for incriminating evidence. The evidence sought concerned an individual who was the target of their investigation. This is an improper use of the administrative subpoena power. Under these circumstances, the law enforcement officers were required to make a showing of probable cause to a neutral magistrate. The Fourth Amendment required judicial authorization before entering upon the curtilage of defendant's home in search of evidence against him. *See United States v. Phibbs,* 999 F.2d 1053, 1077 (6th Cir.1993) (probable cause showing required if purpose of administrative search is a "quest for evidence").

As a consequence, the evidence gathered by way of the warrantless entry upon defendant's property must be suppressed. The suppressed evidence is in paragraph 16 and in paragraphs 21–22 of Agent Hayes' affidavit.

█ It is necessary to determine "whether the untainted information, considered by itself, establishes probable cause" for the search warrant that was issued for 17860 East Lake Shore Drive. *See Smith, supra.* Excising the suppressed materials, the affidavits probable cause show the following: On December 22, 1996 law enforcement received an anonymous tip that the defendant was growing marijuana in Montana, probably at a residence with the telephone number (406) 982–3455 or (406) 837–3546. Telephone number (406) 982–3455 was listed to David Depre, 17680 East Lake Shore Drive, Yellow Bay, Montana. Telephone number (406) 837–3456 was listed to Steve Scott at 170 Tall Pine Court, Big Fork, Montana.

The defendant's Montana driver's license listed an address of 170 Tall Pine Court, Big Fork, Montana. Both defendant's vehicles were registered to him at 170 Tall Pine Court, Big Fork, Montana.

The defendant was arrested in 1991 for the cultivation of approximately 1350 marijuana plants at his residence in Idaho. This conviction was overturned due to a curtilage violation. Defendant has a criminal history, including a conviction for manufacture, delivery and possession with intent for distribution of marijuana in Spokane, Washington.

Surveillance of the residence at 17680 East Lake Shore Drive, Yellow Bay, Montana showed that the windows on the north side always had some type of window covering blocking sunlight from entering. Surveillance further revealed the defendant's vehicles at the residence on at least three occasions but no activity indicating persons actually living there.

Surveillance revealed no trash or refuse storage near the residence at 17680 East Lake Shore Drive, Yellow Bay, Montana which is consistent with marijuana grow operations where trash is removed from the area to prevent law enforcement from discovering evidence.

Power records (excluding the tainted proof) for 17680 East Lake Shore Drive showed that in 1994 the residence's average monthly usage of electricity was 689 kilowatts per hour but that it had increased to 1824 kilowatts per hour as of October, 1997. The power was listed to David Depre, Rt. 1, Iron Mountain, Missouri since 1995. Moreover, there was no biographical data in the power application which is normally provided.

On October 14, 1997 law enforcement saw the defendant cutting the lawn at 17680 East Lake Shore Drive. After cutting the lawn, the defendant went inside the residence and stayed for at least two hours. Then the

lights in the house turned on but no light could be seen in the north end of the house. While shades were drawn on the south side of the house it was evident that lights were on.

On October 15, 1997 law enforcement filmed the defendant's residence at 17680 East Lake Shore Drive with a thermal imaging device. In the opinion of thermal imaging officer, the view of the residence through the thermal imaging device was consistent with a marijuana grow operation as detailed in Hicks' affidavit at paragraph 18.

On October 15, 1997 the power company informed law enforcement that the meter at 17680 East Lake Shore Drive indicated 744 kilowatts of power used in one week. This amount of usage would calculate to almost 3000 kilowatt hours of usage per month which is a high amount of power usage.

I find, based on this information, there is sufficient probable cause to support the issuance of the search warrant.

Wherefore, IT IS ORDERED:

(1) Defendant's Motion to Suppress is **DENIED,** in all respects except for the improper use of the administrative subpoena.

(2) The motion to suppress the evidence obtained by the police and the power company at the meter is **GRANTED.**

(3) There is sufficient information, without considering the suppressed evidence to support a probable cause finding to search the home.

(4) The motion to suppress defendant's admissions is **DENIED.**