**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert Elzay DEPEW, Defendant–Appellant.**

**No. 98–30196.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 13, 1999

Submission Withdrawn May 24, 1999

Resubmitted Feb. 4, 2000

Filed May 2, 2000

---

Laurence J. Ginnings, Missoula, Montana, for the defendant-appellant.

Josh Van de Wetering, Assistant United States Attorney, Missoula, Montana, for the plaintiff-appellee.

Before: PREGERSON and THOMPSON, Circuit Judges, and KELLEHER, District Judge.[1]

PER CURIAM:

## OVERVIEW

Upon receiving an anonymous tip, the government investigated Robert Elzay Depew, the defendant-appellant, for illegally growing marijuana in his home. As part of its investigation, the government used a thermal imager to determine whether Depew's home was emitting an unusual amount of heat. The government used the information gleaned from the thermal imager, as well as other information, to obtain a warrant to search Depew's home, where it found 126 marijuana plants. Depew was charged and convicted of one count of knowingly, willfully, and unlawfully manufacturing a controlled substance in violation of 21 U.S.C. § 841(a)(1). On appeal, Depew contends the district court erred by (1) refusing to authorize, at government expense, employment of an expert witness to testify as to the thermal imager's capabilities, and (2) denying his motion to suppress evidence. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm in part, and remand for further proceedings.

## FACTS AND PROCEEDINGS

On December 22, 1996, DEA Agent Tim Trout reported to Agent Stanton C. Hayes of the Montana Narcotics Investigation Bureau that he had received an anonymous tip that Depew was growing marijuana in Montana, probably at a residence with one of two telephone numbers. Agent Trout also told Agent Hayes that Depew had previously been convicted of growing marijuana in Idaho, but that the conviction had been overturned on constitutional grounds. Further, Agent Trout informed Agent Hayes of the details surrounding Depew's Idaho grow operation, including that Depew had: (1) used a house similar to the one he rented in Montana, (2) placed plywood over the inside of the windows, making them look normal from the outside while preventing light from escaping, and (3) used an elaborate heat ventilating system.

Agent Hayes learned that one of the phone numbers that the informant provided was listed to a David Depre at a residence on East Lake Shore Drive ("East Lake Residence"), while the other phone number was listed to a Steve Scott at a residence on Tall Pine Court ("Tall Pine Residence"). Upon a preliminary view of the residences, Agent Hayes's investigation focused primarily on the East Lake Residence.

According to DEA Special Agent Richard S. Hicks's affidavit, the East Lake Residence, which was visible from the road, was located on the east side of the street. On the property, there was a single-story house, an unattached garage, and a cherry orchard in the backyard. Agent Hayes observed that the windows on the north side of the house had some kind of covering over them, and he never saw either the windows or blinds open. Further, Agent Hicks stated in his affidavit that Agent Hayes had repeatedly seen Depew at the residence but had not observed other activity indicating anyone actually

---

1. The Honorable Robert J. Kelleher, Senior United States District Court Judge for the Central District of California, sitting by designation.

lived there. In particular, he noted that agents had not observed any trash near the residence.

Agent Hayes showed Agent Trout pictures of the East Lake Residence. Agent Trout stated that the residence looked similar to the one Depew used in Idaho. He further told Agent Hayes that Depew had bypassed the electrical meter at the Idaho house.

On October 7, 1997, Agent Hicks provided Agent Hayes with an administrative subpoena to obtain power records for the East Lake Residence and to determine if the electrical meter had been bypassed. The power records indicated that the average monthly usage had increased from 689 KWH to 1824 KWH since 1994. To determine whether the electrical meter had been bypassed, a power employee had to enter onto the East Lake Residence property. For the employee's safety, Agent Hayes accompanied him. While on the property, the employee determined that the electrical meter had in fact been bypassed. To measure the actual amount of electricity used at the East Lake Residence, the employee attached a meter to a transformer located off the property. Agent Hicks stated in his affidavit that while on the East Lake Residence property, Agent Hayes observed duct piping lying on a table and a squirrel cage fan behind the garage, which Agent Hicks alleged are commonly used in grow operations.

On October 15, 1997, at 4:30 a.m., Agent Hayes used an Agema Therma Vision 210 ("Agema 210") thermal imager to observe the East Lake Residence. The thermal imager revealed that an unusual amount of heat was emanating from the house's chimney and the vents on the north side of the house. Agent Hicks stated in his affidavit that the heat patterns were consistent with growing marijuana under artificial light. In addition, the new meter placed on the transformer indicated that the East Lake Residence used 744 KWH of power in one week, or about 3000 KWH per month, which is unusually high.

Based on the above information, the government obtained a search warrant for the East Lake Residence, where the agents discovered 126 mature marijuana plants. Depew was charged with one count of knowingly, willfully, and unlawfully manufacturing a controlled substance in violation of 21 U.S.C. § 841(a)(1).

Depew moved to suppress the marijuana plants, arguing that there was no probable cause to search the East Lake Residence. Specifically, Depew asserted that the evidence of his Idaho grow operation, the bypassed electrical meter, and the heat emissions measured by the thermal imager were obtained in violation of the Fourth Amendment. Depew asserted that the evidence of the bypassed electrical meter had been unconstitutionally obtained because Agent Hayes and the employee had entered the curtilage of his property. In addition, the results of the thermal imaging scan had been unlawfully obtained because (1) the scan intruded into the privacy of his home, and (2) the agent was within the curtilage of his home when he used the thermal imager to measure the heat emanating from the north side of the house.

The district court held that certain parts of Agents Hayes and Hicks's affidavits, including information that was illegally obtained in Depew's Idaho case, could not be used to establish probable cause. *See United States v. Depew*, 992 F.Supp. 1209, 1211 (D.Mont.1998). Further, the district court held that, because Agent Hayes and the power company employee had entered the curtilage of the East Lake Residence when they inspected the electrical meter, the evidence of the tampered electrical meter had been obtained unconstitutionally. *See id.* at 1213. The district court also held, pursuant to our decision in *United States v. Kyllo*, 37 F.3d 526 (9th Cir.1994) ("*Kyllo I*"), that the use of the thermal imager was not *per se* a violation of Depew's Fourth Amendment rights. *See Depew*, 992 F.Supp. at 1212. Finally, the district court found that the thermal imag-

er did not reveal anything in Depew's house and only indicated temperature differentials on the surface of the house. *See id.* As a result, the court determined that the use of the thermal imager did not invade Depew's expectation of privacy, and the government therefore did not need a search warrant before using the thermal imager. *See id.* After excising the unconstitutionally obtained evidence, the district court held that there was probable cause to believe Depew was growing marijuana, and therefore the warrant was valid. *See id.* at 1213–14.

On March 24, 1998, Depew was found guilty of violating of 21 U.S.C. § 841(a)(1).

On appeal, Depew asserts the district court erred by (1) refusing to appoint, at government expense, an expert witness to testify about the Agema 210's capabilities, and (2) denying his motion to suppress the evidence obtained by using the thermal imager.[2]

## DISCUSSION

### I. Jurisdiction

■ Pursuant to the Federal Rules of Appellate Procedure, a defendant must file his notice of appeal "in the district court within 10 days after ... the entry of either the judgment or the order being appealed." Fed. R.App. P. 4(b)(1)(A)(i). We construe any ambiguity in favor of saving the appeal. *See, e.g., MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 502 (9th Cir. 1986) (holding that a later date for entry of judgment would apply when the clerk had whited-out an earlier date and wrote in the later date causing confusion as to which date applied).

■ In the present case, there is some confusion as to when the district court entered its judgment against Depew. Listed next to June 26, 1998 on the district court docket sheet, the entry reads: "JUDGMENT and Commitment entered as to Robert Elzay Depew ... [Entry date

06/30/98]." (Brackets in the original). Despite the docket sheet's June 26th date, the entry itself indicates that the official date of entry of judgment is June 30th. The discrepancy in the dates is important because Depew filed his notice of appeal on July 8, 1998, twelve days after June 26th, but only eight days after June 30th. For the purposes of preserving Depew's appeal, and because it is unclear when the judgment was entered, we hold that the district court entered its judgment against Depew on June 30, 1998, and thus his appeal is timely.

### II. Expert Witness

■ Pursuant to 18 U.S.C. § 3006A(e)(1), a court shall authorize employment of an expert witness for the defendant if it finds that an expert is necessary and that the defendant cannot afford to pay an expert's fees. Here, Depew filed a motion requesting that the court authorize, at government expense, employment of an expert to testify about the Agema 210's capabilities. The district court never ruled on the motion.

■ We treat the district court's failure to rule on Depew's motion as a denial of it. We review that denial for an abuse of discretion. *See United States v. Labansat,* 94 F.3d 527, 530 (9th Cir.1996). For us to hold that the district court abused its discretion by not authorizing employment of an expert witness, Depew must show that (1) "a reasonably competent counsel would have required the assistance of the requested expert for a paying client," and (2) "he was prejudiced by the lack of expert assistance." *Id.* Prejudice must be established by clear and convincing evidence. *See id.*

Depew has failed to establish that he was prejudiced by the district court's failure to authorize employment of an expert witness to testify about the Agema 210's

---

**2.** Depew also asserts the district court erred at sentencing when it (1) refused to give him a two-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), and (2) denied Depew "safety valve" relief pursuant to 18 U.S.C. § 3553(f). Because we remand on other grounds, we do not address these issues.

capabilities. In *United States v. Kyllo,* 190 F.3d 1041 (9th Cir.1999) *petition for cert. filed,* (March 7, 2000) (No. 99–8508) ("*Kyllo III*"), we held that the government's use of the Agema 210 was not a "search" within the meaning of the Fourth Amendment because the imager did not intrude into the defendant's home. *See id.* at 1046 ("Whatever the 'Star Wars' capabilities this technology may possess in the abstract, the thermal imaging device employed here intruded into nothing."). In the present case, the videotape of the thermal scan reveals that the Agema 210 did not intrude into Depew's residence, but only measured heat emanating from it. *See Depew,* 992 F.Supp. at 1212. Depew was not prejudiced by the district court's failure to authorize an expert to testify about the Agema 210's capabilities.

### III. Constitutionality of the Thermal Scan

■ We review de novo whether a warrantless search violates the Fourth Amendment, reviewing the district court's factual findings for clear error. *See Kyllo III,* 190 F.3d at 1045.

■ Relying on our decision in *United States v. Kyllo,* 140 F.3d 1249 (9th Cir. 1998) ("*Kyllo II*"), Depew argues that the government's use of the thermal imager to detect heat emanating from his home without a warrant violated the Fourth Amendment. In *Kyllo II,* we agreed with this argument, and held that measuring the heat emanating from an individual's home with a thermal imager without a warrant violated the Fourth Amendment. *See id.* at 1255. However, we withdrew that opinion. *See United States v. Kyllo,* 184 F.3d 1059 (9th Cir.1999). Thereafter, we issued our opinion in *Kyllo III,* in which we held that the government's use of an Agema 210 did not violate the Fourth Amendment. *See Kyllo III,* 190 F.3d at 1047. In so holding, we noted that the thermal imager did not reveal any intimate details, but instead only "indicated amorphous 'hot spots' on the roof and exterior wall and not the detailed images of private activity that [the defendant] suggests the technology

could expose." *Id.* Thus, to establish a Fourth Amendment violation based solely on the use of a thermal imager, Depew must establish that the scan revealed details of the inside of his home.

■ The government's scan of Depew's home did not reveal any details. The district court noted that, although the thermal imager revealed the presence of a large amount of heat emanating from both the chimney and the vents on the north side of the house, and the location of the exterior wall studs and cross-beams, the imager did not show any "interior walls, doors or objects." *Depew,* 992 F.Supp. at 1212. Because the scan did not reveal any details of the inside of Depew's home, the thermal scan alone did not violate Depew's rights under the Fourth Amendment.

■ Even though a thermal scan may not by itself violate the Fourth Amendment, Depew contends that when such surveillance is performed within the curtilage of a home, and without a warrant, a Fourth Amendment violation occurs. He contends that the agents were within the curtilage of his home when they used the thermal imager to scan the north side of his house.

■ To determine whether an area is within a home's curtilage, we look at four factors:

> the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.

*United States v. Dunn,* 480 U.S. 294, 301, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987); *see United States v. Traynor,* 990 F.2d 1153, 1158–59 (9th Cir.1993). The absence of a factor does not mean that the area is not within a home's curtilage, rather the key consideration is "whether the area in question is so intimately tied to the home itself that it should be placed under the home's

'umbrella' of Fourth Amendment protection." *Dunn*, 480 U.S. at 301, 107 S.Ct. 1134. Determining whether an area is within a home's curtilage is a fact-intensive inquiry. *See Traynor*, 990 F.2d at 1156–57 (holding that whether an area is within a home's curtilage is a fact-intensive inquiry and thus the district court's holding will be reviewed for clear error).

Depew alleges that the agents entered the grassy area between the house and the garage and that the area was inherently private because it contained lawn furniture, it could not be viewed from adjoining properties, and Depew, as a nudist, was frequently in the area without clothing. The government acknowledges that the agents entered within the property lines of Depew's East Lake Residence, but it argues the agents never got any closer than seventy-five feet of the house and never entered the area between the house and the garage.

The district court did not make any findings as to whether the agents were within the curtilage of Depew's home when they used the thermal imager. That is a fact-intensive inquiry. Accordingly, we remand to the district court for it to determine whether the agents were within the curtilage when they used the thermal imager, and if they were, then whether there was probable cause, without considering the results of the thermal imaging, to support issuance of the warrant. If probable cause for issuance of the warrant is found to be lacking, evidence obtained by the execution of the warrant must be suppressed.

## CONCLUSION

The district court did not abuse its discretion by failing to authorize employment of an expert witness at government expense to testify as to the thermal imager's capabilities. Although the use of the thermal imager did not reveal details of the inside of Depew's house, and therefore did not result in a Fourth Amendment violation solely because of its use, there is a dispute of fact as to whether the agents were within the curtilage of Depew's house when they made their thermal imager scan. Accordingly, we remand this case to the district court to make the necessary factual findings, determinations appropriate to those findings, and for further proceedings consistent with this opinion.

AFFIRMED in part and REMANDED.