**UNITED STATES of America, Plaintiff—Appellee,**

v.

**PHU TAN LUONG, a/k/a Peter Luong, Defendant—Appellant.**

No. 06–50525.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 8, 2008.

Filed Feb. 12, 2008.

---

Michael J. Raphael, Esq., Office of the U.S. Attorney, Los Angeles, CA, Jeannie

M. Joseph, Esq., Office of the U.S. Attorney, Santa Ana, CA, for Plaintiff–Appellee.

Stanley I. Greenberg, Esq., Law Offices of Stanley I. Greenberg, Los Angeles, CA, for Defendant–Appellant.

Before: FARRIS, FISHER, and M. SMITH, Circuit Judges.

## MEMORANDUM *

Appellant Phu Tan Luong appeals his conviction in the district court for 35 counts of healthcare fraud and aiding and abetting, 18 U.S.C. §§ 1347, 2(a) and (b), and five counts of money laundering, 18 U.S.C. § 1957. Because the parties are familiar with the facts, we do not recount them here, except as necessary to explain our decision. We affirm Luong's conviction.

## I. Entitlement to a *Franks* Hearing

■ Luong first contends that the district court erred in finding that he was not entitled to a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), to challenge a search warrant issued on April 30, 2004. Luong challenges the validity of that warrant because the affidavit on which it was based, written by Special Agent Alison Zybul, erroneously referred to the amount of Ensure billed by United Medical Supply ("UMS") in "cans" rather than "units," overstating the amount actually billed by a factor of two and a half. To be entitled to a *Franks* hearing a defendant must (1) make a substantial preliminary showing that the affidavit contained a misleading omission or false statement resulting from a deliberate or reckless disregard of the truth and (2) demonstrate that had there been no omission or false statement, the affidavit would have been insufficient to establish probable cause. *United States v. Kyllo*, 37 F.3d 526, 529 (9th Cir.1994).

Luong's argument fails on both grounds. First, although this Circuit's "case law does not require clear proof of deliberate or reckless omissions or misrepresentations," *United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1111 (9th Cir. 2005), a defendant cannot make the requisite substantial showing merely by demonstrating that the agent made a false statement in an affidavit when the truth was known to others and readily available to the agent. Rather, such a circumstance is simply *evidence*—not conclusive proof—of recklessness on the part of the agent, which the court is to weigh with all other relevant circumstances. *See United States v. Chesher*, 678 F.2d 1353, 1360–61 (9th Cir.1982) (describing Agent's failure to obtain "information [that] not only was true, but that ... quickly was available to investigative agents" as one of "four items of evidence which tend to corroborate [defendant]'s charge that the statement was intentionally or recklessly false"). In this case, the nature of Zybul's misstatement (using an incorrect unit for counting drinks that are, in fact, stored, delivered, and served in cans) suggests, at most, negligence. Under these circumstances, the district court's determination that Zybul did not act with reckless disregard is not clearly erroneous. *Cf. Kyllo*, 37 F.3d at 528–29 & n. 1 (holding a misreading of a spreadsheet's listing of "average" usage

---

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

power usage as "appropriate" or "maximum" was negligent rather than reckless).

Second, even if Luong could establish reckless or intentional falsity on the part of Zybul, he cannot establish the second prong of materiality. Zybul's affidavit goes well beyond allegations of overbilling for Ensure. It reports 363 complaints filed by Medicare beneficiaries against UMS alleging receipt of Ensure and syringes that the beneficiaries neither wanted nor needed. It mentions numerous instances where syringe kits, hospital beds, and motorized wheelchairs were billed to Medicare but never received by beneficiaries. It recounts financial analyses of bank accounts that demonstrated that UMS could not have purchased all the equipment for which it billed Medicare and further revealed large, suspicious payments for "commissions." Even without allegations of enteral nutrition overbilling, the affidavit provided more than enough probable cause to justify a search warrant.[1] The district court did not err in denying Luong a *Franks* hearing.

## II. Admission of the Medicare Overpayment Letter

█ Luong next argues that the district court denied him his Fifth Amendment right to confrontation, as recognized in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), when it admitted a letter from a Medicare auditor concluding that Luong had overbilled Medicare by approximately $8 to 9 million. Confrontation Clause violations are subject to harmless error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 680–81, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). "Evi-

dence erroneously admitted in violation of the Confrontation Clause must be shown harmless beyond a reasonable doubt, with courts considering the importance of the evidence, whether the evidence was cumulative, the presence of corroborating evidence, and the overall strength of the prosecution's case." *United States v. Nielsen*, 371 F.3d 574, 581 (9th Cir.2004) (quoting *United States v. Bowman*, 215 F.3d 951, 961 (9th Cir.2000)).

In this case, any error in admitting the letter was harmless beyond a reasonable doubt. While the letter provides evidence that Luong's Medicare fraud extended well beyond the 35 specific instances of fraud for which he was indicted, it was of only minor importance as to those counts themselves. The testimony of the seven beneficiaries that they did not require feeding tubes to consume Ensure provided substantial corroborating evidence that there was no medical necessity as alleged by those 35 counts. Extensive documentary evidence and Vu Nguyen's and Zybul's testimony also established the common fraudulent scheme. The evidence in the letter was of scant importance and, to the extent it was relevant, it was corroborated by substantial independent evidence. Even absent the letter, there was more than sufficient evidence to convict Luong. Therefore, even assuming, *arguendo*, that the district court erred in admitting the letter into evidence, the error was harmless, and therefore not a ground for reversal.

█ Luong also argues that the prosecution relied on the letter to establish a multimillion-dollar loss for the purpose of an upward departure in Luong's sentence.

1. Indeed, circumstance seems to have provided us with a virtual controlled experiment in Bernal's seizure warrant affidavit, which recounted all of the suspicious circumstances mentioned in Zybul's warrant—with the exception of the Ensure overbilling. If Bernal's affidavit provided probable cause for a search warrant, which Luong does not contest, then *a fortiori* Zybul's must have provided the same.

To the extent this is true, however, Luong's Confrontation Clause argument still fails because "*Crawford* speaks to trial testimony, not sentencing." *United States v. Littlesun*, 444 F.3d 1196, 1199–1200 (9th Cir.2006) ("[H]earsay is admissible at sentencing, so long as it is accompanied by some minimal indicia of reliability.") (internal citation and quotation marks omitted). There was, therefore, no error in using the letter at sentencing.

### III. Response to the Jury Note

■ Finally, Luong argues that the district court violated his right to due process in its response to the jurors' query concerning co-schemer liability. Luong argues that, rather than directing the jury to the specific instructions that contained the answer to their question, the court ought instead to have unhelpfully directed the jury's attention to the instructions in their entirety and included additional "language favorable to the defendant."

This argument also fails. The district court's response to the jury was an entirely correct statement of law. *Cf. Bollenbach v. United States*, 326 U.S. 607, 612–14, 66 S.Ct. 402, 90 L.Ed. 350 (1946) (emphasizing instructions should reflect the correct law) To the extent the response "singled out" the two jury instructions, it did so because those instructions directly answered the jury's question.[2] Moreover, the response was not an unqualified "yes" to the jury's hypothetical question whether a defendant "would be guilty" if the jury made certain determinations. Rather, the "[y]es" was immediately qualified with "*but only* if the Government proves *beyond a reasonable doubt* ... *all* of the elements of health care fraud" and co-schemer liability (emphasis added)—language that can only be interpreted as "favorable to the defendant." *See United States v. Verduzco*, 373 F.3d 1022, 1031–32 (9th Cir.2004) (determining instruction proper because "read in context, the contested language neither directed the verdict, constituted judicial fact-finding, nor exceeded the scope of the question in a prejudicial way").

### Conclusion

The district court did not err in denying Luong a *Franks* hearing or in responding to the jury's inquiry as it did. Even if it did err in admitting the Medicare overpayment letter, such error was harmless, and therefore not a ground for reversal.

AFFIRMED.

---

**2.** We reject Luong's characterization of instructions 16 and 17 as somehow "favor[ing] conviction." The instructions were neutral descriptions of the law, describing the elements of health care fraud and of co-schemer liability, respectively. Indeed, instruction 16 itself emphasized that "[i]n order for a defendant to be found guilty of health care fraud, the government must prove each of the following elements beyond a reasonable doubt."