**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Douglas Merrill NIELSEN,
Defendant–Appellant.**

No. 03–30347.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 5, 2004.

Filed June 9, 2004.

Ronald J. Yengich and Vanessa Ramos–Smith, Salt Lake City, UT, for the defendant–appellant.

William W. Mercer and James Seykora, U.S. Department of Justice, Billings, MT; and Demetra Lambros, U.S. Department of Justice, Washington, D.C., for the plaintiff-appellee.

Before: A. WALLACE TASHIMA, RICHARD A. PAEZ, and CARLOS T. BEA, Circuit Judges.

BEA, Circuit Judge:

Douglas Merrill Nielsen ("Nielsen") appeals his conviction and sentence for possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Nielsen contends that the warrant issued to search his home was unsupported by probable cause; that testimonial hearsay was introduced at his trial in violation of the Confrontation Clause; and that the district court erred in declining to grant a downward adjustment for acceptance or responsibility. For the reasons stated in this opinion, we affirm.

I.

On January 3, 2002, after probationer Katherine Fritzler missed a scheduled appointment with her probation officer, she was contacted by Agent Jeffrey Faycosh of the Montana Division of Criminal Investi-

gation. A search of Fritzler's home revealed methamphetamine and marijuana.

Fritzler agreed to cooperate. She informed Faycosh that she had purchased a half gram of methamphetamine from Nielsen at his home for $100, three or four days before her arrest. Fritzler stated Nielsen appeared to have a large quantity of the drug on hand, which he kept in a floor safe in the basement of his home.

Faycosh did a background check on Nielsen, finding an address for Nielsen on Hillview Lane in Billings, Montana, as well as a police report indicating Nielsen had been implicated in prior drug investigations. In April 1999, a confidential informant had purchased 1.5 ounces of methamphetamine from a suspect who had indicated that Nielsen was his supplier. Another Montana DCI report from December 2000 described an interview with Kent Kreiter, an arrestee in a federal drug conspiracy case, who stated that he had purchased methamphetamine from Nielsen on a number of occasions beginning in early 1999, in quantities of up to one ounce. According to the report, Kreiter said that when he purchased drugs from Nielsen at his house in Billings, Nielsen had retrieved the methamphetamine from the basement. Kreiter also stated that Nielsen repeatedly bragged about having large quantities of methamphetamine at his Billings residence. Last, Faycosh also obtained an FBI report by Agent Dan Fagetan describing an interview with informant Charles Nation, who admitted to purchasing methamphetamine from Nielsen beginning in August 2000.

On January 4, 2002, Faycosh and another agent drove by what the informants had indicated was Nielsen's house. A maroon truck parked in front of the residence bore Montana plates registered in Nielsen's name. Faycosh checked the real property records showing Nielsen was the record owner of the house on Hillview Lane. Faycosh then checked Montana criminal records: Nielsen's showed he had been convicted of drug possession in 1977 and 1992.

Following his investigation, Agent Faycosh filed a sworn application for a search warrant with a statement of his training and background in drug investigations. A search warrant was issued, and Nielsen's home was searched on January 7, 2002. A woman identifying herself as Nielsen's girlfriend, Roxanne Volz, was present when the search warrant was executed. The search revealed a total of 731.1 grams of 92% pure methamphetamine, as well as $7000.00 in cash found in a floor safe with the drugs.

Based on the evidence discovered at Nielsen's Billings residence, additional warrants were obtained for a house in Red Lodge, Montana, two bank accounts, and a safety deposit box. A shotgun and various drug paraphernalia were recovered from the Red Lodge cabin, and a total of $31,551.38 was seized from the bank accounts. On June 24, 2002, Nielsen was indicted for one count of possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Nielsen was arrested in Absarokee, Montana, on August 21, 2002, and officers found an additional 4 ounces of methamphetamine in a house that Nielsen had been occupying.

In the district court, Nielsen moved to suppress the evidence seized from his home, claiming the government had not made an adequate showing that the government informants referred to in the search warrant application were reliable, and that the warrant was not otherwise supported by probable cause. Nielsen also moved to suppress the subsequently discovered contraband and proceeds as "fruit of the poisonous tree," because the subse-

quent warrants were based on evidence seized during the initial search.

The district court denied Nielsen's suppression motion, concluding that sufficient probable cause existed to issue the warrant. The district court rejected Nielsen's challenge to the reliability and veracity of the government informants, finding "the informants' basis of knowledge was substantial"; "[t]he tips are so similar that they corroborate each other"; and the informants' tips were reliable because they were statements against penal interest.

The district court also noted that Faycosh had observed that Nielsen's house was a split-level building with a basement and that a maroon truck registered to Nielsen was parked outside. The district court did not assign importance to Nielsen's criminal history, because it only consisted of three paragraphs in a nine-page affidavit, and "was not necessary to a finding of probable cause."

The government's first witness at Nielsen's jury trial was Agent Faycosh, who testified that his investigation began with Katherine Fritzler's post-arrest statement that she had purchased methamphetamine from Nielsen which he kept in a floor safe in the basement of his home. According to Faycosh, after agents located the floor safe, Nielsen's girlfriend Volz denied being able to access the safe's contents:

Q. Did you ask the occupant of the house if they had availability to get into that safe?

A. Yes. The lady had no way of getting into the safe.

Q. And who was she identified as? Was she a relative of the defendant?

A. A girlfriend of the defendant, I believe.

Q. And she said she had no access to the safe?

A. That's correct. She did not have access to the room.

Q. Did she indicate anybody that did have access?

A. The defendant.

Mr. Yengich: Objection, it's hearsay. Ask that it be stricken. It's unconfrontable [sic], as well.

The Court: Overruled.

Faycosh then described using various tools and a locksmith to break into the floor safe. The safe contained methamphetamine, cash, and videotapes of Nielsen using drugs and having sex with Fritzler, not Volz. In other areas of the house, the agents recovered additional small amounts of methamphetamine, a digital scale, small plastic bags, and a mortar and pestle.

On redirect, Faycosh was asked if he did not take fingerprints on the safe because Volz had already said the safe belonged to Nielsen. Nielsen's attorney objected on hearsay and Confrontation Clause grounds, and this time the court sustained the objection.

Nielsen did not testify at his trial. Katherine Fritzler and Kent Kreiter testified that they had purchased methamphetamine from Nielsen at his house, and that Nielsen had large quantities of the drug on hand. FBI Agent Matthew Salacinski testified that after Nielsen's arrest in Absarokee, Montana, officers found mail bearing Nielsen's name and the Billings address, including power, water and internet bills, bank statements and personal mail.

The jury returned a verdict of guilty. A presentence report ("PSR") was prepared by the U.S. Probation Office which recommended a total offense level of 36. The PSR recommended against a downward adjustment in Nielsen's offense level for acceptance of responsibility, noting:"The defendant is not entitled to a reduction in

the base offense level under U.S.S.G. § 3E1.1 because he put the Government to its burden of proof at trial by denying the factual elements of guilt."

At a sentencing hearing on July 30, 2003, Nielsen's attorney asserted that an earlier offer by Nielsen to enter a conditional guilty plea entitled him to a downward adjustment for acceptance of responsibility pursuant to § 3E1.1. In response, the government denied that Nielsen had cooperated or shown any signs of remorse:

> We wanted to know where it was coming from, where it was being manufactured. He didn't want to present us with that evidence.... And there is no reason, not even in the presentence report, that he attempted to say that by saying, Yes, I did it, and I possessed this with intent to distribute, and I'm remorseful, but I still want to preserve [Nielsen's challenge to the denial of the motion to suppress]. He didn't do that, Judge, he just wants to make a legal argument to this Court.

(ER 108).

The district court concluded that Nielsen was not entitled to an acceptance of responsibility adjustment, noting: "It did go to trial. He did not provide any information to the Government." The district court entered judgment, adopting the findings and recommendations of the PSR, and sentencing Nielsen to 285 months in prison followed by five years of supervised release.

On appeal, Nielsen contends the warrant to search his home was not supported by probable cause, that the admission of Roxanne Volz's testimonial hearsay statements violated his Sixth Amendment right to confront witnesses against him, and that the district court erred in refusing to grant a three-level decrease in his offense level for acceptance of responsibility.

## II.

### A. Probable Cause

█ Nielsen contends that the warrant was not supported by probable cause because no evidence was given to the magistrate regarding the reliability or veracity of the individuals who had told police of Nielsen's activities; information from the informants was not independently verified; and Nielsen's prior drug convictions mentioned in the warrant application were too remote to create probable cause. These arguments lack merit.

█ We review de novo the district court's denial of a motion to suppress evidence gathered pursuant to an allegedly defective warrant, see United States v. Celestine, 324 F.3d 1095, 1100 (9th Cir.2003); but a magistrate judge's finding of probable cause to issue a search warrant is reviewed for clear error, see United States v. Wright, 215 F.3d 1020, 1025 (9th Cir. 2000).

█ Probable cause is determined by looking at the totality of circumstances known to the officers at the time of the search. Illinois v. Gates, 462 U.S. 213, 230–31, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "Probable cause exists if it would be reasonable to seek the evidence in the place indicated in the affidavit." United States v. Wong, 334 F.3d 831, 836 (9th Cir.2003).

█ In an exhibit accompanying his search warrant application, Agent Faycosh outlined the evidence justifying a search of Nielsen's home, including the interviews with Fritzler, Kreiter and Nation, concluding:

> Based upon the information provided by Fritzler who has not previously provided information to law enforcement, however, who made statements against her

interest, the convictions of Nielsen for Dangerous drug violations in 1992 and 1977, the information of distribution of dangerous drugs during 1998, 1999 and 2000 provided by Kreiter and Nation, give Agent Jeffrey E. Faycosh, Probable Cause to believe that evidence of the crimes of Criminal Possession of Dangerous Drugs and Criminal Possession of Dangerous Drugs with Intent to Sell will be located in the residence of Douglas Merrill Nielsen, located at 412 Hillview, Billings, Yellowstone County, MT.

Nielsen maintains that the warrant application contains no information by which the magistrate could find any of the named informants credible. The totality of the circumstances supporting the issuance of a warrant is based upon, among other things, an informant's veracity and reliability, and the basis of the informant's knowledge. *Gates,* 462 U.S. at 238, 103 S.Ct. 2317. Here, all of the informants named in Faycosh's affidavit stated they had firsthand knowledge of Nielsen's methamphetamine trafficking based on their earlier methamphetamine buys.

Although Nielsen argues that no evidence was presented to the magistrate that the informants had provided reliable information in the past, other indications of the informants' reliability are present. The district court correctly noted that the veracity of Fritzler, Kreiter and Nation is buttressed by the similarity of their accounts: All three stated Nielsen possessed large quantities of methamphetamine, and both Fritzler and Kreiter stated that they had purchased methamphetamine from Nielsen, and that Nielsen had retrieved it from the basement of his house. *See United States v. Landis,* 726 F.2d 540, 543 (9th Cir.1984) ("Interlocking tips from different confidential informants enhance the credibility of each.").

The government also observes that Fritzler's statement that she had purchased methamphetamine from Nielsen and used it with him on many occasions was contrary to her penal interest at the time she was interviewed—an additional indicator of truthfulness. *See United States v. Bishop,* 264 F.3d 919, 925 (9th Cir.2001); *see also United States v. Patayan Soriano,* 361 F.3d 494, 505 (9th Cir.2004) (noting that admission of participation in criminal conspiracy bolstered informant's reliability).

Agent Faycosh then corroborated certain factual details contained in the informants' statements, namely Nielsen's ownership of the house and truck, the color of Nielsen's truck, and the layout of his home. *Bishop,* 264 F.3d at 925 (noting veracity "may be demonstrated through independent police corroboration of the information provided by an informant.").

Nielsen argues that the reference to his criminal history could not provide probable cause because his 1977 and 1992 drug convictions were "stale." It is apparent from its order that the district court assigned little weight to this information in denying Nielsen's motion to suppress: "Agent Faycosh's affidavit consists of more than nine pages. The information about the drive-by and Defendant's criminal history occupies three paragraphs near the end of the affidavit. Such information was not necessary to a finding of probable cause."

Because the warrant to search the house on Hillview Lane was supported by probable cause, the later obtained warrants were not tainted by improperly obtained evidence. As the search warrant was properly procured and executed, we need not address Nielsen's argument that absent a valid warrant, the search was not permissible under the good faith exception to the requirement of a warrant.

## B. Confrontation Clause Violation

 Nielsen contends the district court improperly admitted the hearsay statements of Roxanne Volz in violation of the Confrontation Clause of the Sixth Amendment to the Federal Constitution, as evidence that she did not have access to the floor safe and that Nielsen did. We review de novo claimed violations of the Confrontation Clause. *United States v. Orellana–Blanco*, 294 F.3d 1143, 1148 (9th Cir.2002).

During his testimony, Agent Faycosh related how Roxanne Volz was asked during the course of the search who had access to the floor safe where the methamphetamine was found, and she replied that Nielsen did. Such testimonial out-of-court statements are prohibited under the Confrontation Clause unless the declarant witness is shown to be unavailable and the defendant had an earlier opportunity to cross-examine the declarant. *Crawford v. Washington*, ── U.S. ──, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) (holding that wife's out-of-court account of fight violated the Confrontation Clause). Testimonial hearsay includes "custodial examinations" and "[s]tatements taken by police officers in the course of interrogations." *Crawford*, 124 S.Ct. at 1364.

 The government concedes the admission of Volz's statement was improper, but contends the error was harmless.[1] Confrontation Clause violations are subject to harmless error analysis, because "the Constitution entitles a criminal defendant to a fair trial, not a perfect one." *Delaware v. Van Arsdall*, 475 U.S. 673, 680–81, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (holding that Confrontation Clause violation was subject to harmless error evaluation). "Evidence erroneously admitted in violation of the Confrontation Clause must be shown harmless beyond a reasonable doubt, with courts considering the importance of the evidence, whether the evidence was cumulative, the presence of corroborating evidence, and the overall strength of the prosecution's case." *United States v. Bowman*, 215 F.3d 951, 961 (9th Cir.2000) (holding that introduction of co-conspirator's out-of-court statements was harmless considering the weight of the admissible evidence).

 Nielsen's argument rests on the possibility that the methamphetamine could have belonged to Volz, since she also resided at the house. For the purposes of the federal drug statutes, "[p]ossession may be either actual or constructive, with the latter concept encompassing a defendant's power to exercise dominion and control over the narcotics...." *United States v. Delgado*, 357 F.3d 1061, 1065 (9th Cir. 2004).

1. The government suggests that it was not improper to admit the first part of Volz's statement—that she did not have access to the safe—because it was admitted for the non-hearsay purpose of explaining why officers needed to break into the safe during the course of their search. Apart from being a *post hoc* rationalization, this argument is incorrect. There was no issue regarding proper execution of the search warrant or whether excessive force (and damage therefrom) was used in breaking open the safe. Hence, the non-hearsay ground upon which Volz's statement negating access to the safe was offered is irrelevant. However, as she was a co-occupant of the house, her negation of access was circumstantial evidence that someone else did have access to the safe. That someone else: most probably defendant Nielsen. Volz's credibility is necessarily taken into consideration in determining the weight of that circumstantial evidence. Therefore, the only relevant purpose for which her statement negating access can be received is "testimonial" to the fact that Nielsen did have access. In the end, both Volz's statements that Nielsen had access and that she did not have access are testimonial declarations proved in violation of the Confrontation Clause. *See Crawford*, ── U.S. at ──, 124 S.Ct. at 1364.

■ That Volz resided at the Hillview house is insufficient to prove that the drugs belonged to her. "When evidence is found in a residence occupied by more than one person, this court has required some additional evidence tying one or both of them to the contraband in order to establish possession." *United States v. Barajas–Montiel*, 185 F.3d 947, 955 (9th Cir.1999).

According to the license records for his truck and the mail recovered at the time he was arrested, Nielsen resided in the house where the floor safe was located, and county records proved he owned the house. Both Fritzler and Kreiter testified at trial that they had purchased methamphetamine from Nielsen at his Hillview Lane house. Fritzler also testified that Volz had denied having access to the safe. Additionally, the presence of videotapes in the safe depicting Nielsen having sex and using drugs with Fritzler—someone other than Volz, his current girlfriend—suggests the safe was possessed by Nielsen, not Volz.

Considering the minor importance of Volz's statement and the cumulative evidence of Nielsen's guilt, the admission of the contested statement, while improper, was harmless beyond a reasonable doubt.

## C. Acceptance of Responsibility

■ Nielsen contends he should have received a three-level reduction in his offense level under the Sentencing Guidelines for acceptance of responsibility. The Guidelines allow for a two-level downward adjustment where a defendant "clearly demonstrates acceptance of responsibility for his offense," U.S.S.G. § 3E1.1(a). A qualifying defendant can be eligible for another one-level reduction for acceptance of responsibility, if his offense level is not greater than 16, prior to receiving any adjustments under subsection (a), and he assists the government by timely providing complete information regarding his involvement in the offense, or timely enters a guilty plea. U.S.S.G. § 3E1.1(b).

■ We review de novo the district court's interpretation of the Sentencing Guidelines, *see United States v. Ochoa–Gaytan*, 265 F.3d 837, 841 (9th Cir.2001), but the factual basis for the district court's decision regarding an acceptance of responsibility adjustment is reviewed for clear error. *United States v. Velasco–Medina*, 305 F.3d 839, 853 (9th Cir.2002). The "determination of the sentencing judge is entitled to great deference on review" because of the sentencing judge's "unique position to evaluate a defendant's acceptance of responsibility." *Id.* (quoting U.S.S.G. § 3E1.1, cmt. n. 5).

■ Conspicuously absent from the record on appeal is any significant evidence that Nielsen accepted responsibility for his crime. "Although a district court may not punish a defendant for failing to participate in fact-gathering at a presentence interview or for not pleading guilty, the defendant must carry the burden of demonstrating the acceptance of responsibility." *United States v. Innie*, 7 F.3d 840, 848 (9th Cir.1993). Nielsen did not carry his burden, and contrary to his assertions, the record shows he was not punished for asserting his right to trial. The sentencing colloquy indicates the district court considered the question and concluded that Nielsen was not eligible, at least in part because of his failure to assist authorities.

■ To receive the two-point downward adjustment, a defendant must at least show contrition or remorse. *See United States v. Gallant*, 136 F.3d 1246, 1248 (9th Cir.1998) (holding that district court properly denied § 3E1.1 adjustment where defendant merely regretted getting caught). The application notes to § 3E1.1

also list a series of criteria probative of whether a defendant is entitled to this adjustment:

(a) truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable ...

(b) voluntary termination or withdrawal from criminal conduct or associations;

(c) voluntary payment of restitution prior to adjudication of guilt;

(d) voluntary surrender to authorities promptly after commission of the offense;

(e) voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense;

(f) voluntary resignation from the office or position held during the commission of the offense;

(g) post-offense rehabilitative efforts (e.g., counseling or drug treatment); and

(h) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

U.S.S.G. § 3E1.1, comment n. 1(a)-(h). Nielsen's actions do not display any of these characteristics. Accordingly, denial of the downward adjustment was proper.

### III.

Nielsen's several challenges to his conviction and sentence all fail. The warrant to search Nielsen's residence was supported by probable cause. Although the admission of Volz's out-of-court testimonial statements as to Nielsen's access to the safe in which the drugs were stashed violated the Confrontation Clause, the error was harmless given the remaining, overwhelming evidence of Nielsen's guilt. Finally, the district court's denial of a

downward adjustment for acceptance of responsibility was proper. Accordingly, we affirm the district court's judgment and sentence.

**AFFIRMED.**