TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-04-00014-CR






Vincent Davis, Appellant




v.




The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT


NO. 2030106, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING






O P I N I O N




 Appellant Vincent Davis appeals his conviction for aggravated assault with a deadly
weapon. See Tex. Pen. Code Ann. § 22.02(a)(2) (West Supp. 2004-05). The jury found appellant
guilty. The trial court assessed punishment at twelve years' imprisonment after finding that appellant
had been convicted of a prior felony as alleged for the enhancement of punishment. 


Point of Error

 In a single point of error, appellant claims that the trial court denied him his
constitutional right of confrontation and cross-examination under the Sixth Amendment to the
United States Constitution. (1) Appellant urges that the trial court erred in admitting, over objection,
the hearsay out-of-court statements of the alleged complainant made to a police officer near the scene
of the offense when the alleged complainant did not testify and her unavailability was never
established. Appellant relies upon Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004).


Background

 The amended indictment alleged that appellant committed aggravated assault with
a deadly weapon upon Patricia Ford. Hands and a rope were alleged as deadly weapons. The
evidence shows that on January 6, 2003, Paula Weightman came out of her Travis County home that
morning to smoke a cigarette. Weightman heard "blood-curdling" screams from the home across
the street in the 1000 block of Karen Avenue where Patricia Ford and appellant lived together. She
heard Ford scream, "Get out, Get out," heard the sounds of an assault, and heard a male voice yell,
"I will show you." Weightman called 911 for police assistance. After the police arrived, Ford came
running across the street, trembling and crying. Over objection, Weightman testified that Ford told
her, "He tried to kill me." 

 Austin Police Officers Albert Cortez and Arturo Canizales arrived on the scene within
a matter of minutes. After the 911 call, the officers heard a woman screaming and approached the
front door of the house from which the screams had come. Cortez saw a woman inside yelling
hysterically and holding her hands to her face. The man inside fled to the back of the house. When
Cortez entered the house, he told the woman to leave. Officer Cortez located the man, later
identified as appellant, in the rear of the house and handcuffed him. A rope was found in the living
room. A second man, Lee Hodges, was found in the house. He rented a room from Ford. It was
determined that he was not involved in the assault. 

 Officer Canizales testified that he followed the woman who had exited the house to
the front porch of the Weightman home. The woman was identified as Patricia Ford. According to
Canizales, Ford was still crying, trembling, and frightened. She bore signs of injuries. There was
a knot on the right side of her face, blood on her lips, and a redness around her neck that soon turned
into a large bruise. 

 At this point, appellant objected to further testimony from Canizales on the basis,
inter alia, that he was being denied the right of confrontation of the witnesses against him. The
prosecutor had indicated that Ford would not testify. After a hearing in the jury's absence, the trial
court overruled the objection. There was no showing that Ford was unavailable or that appellant had
had a prior opportunity to cross-examine Ford. 

 In the presence of the jury, Officer Canizales testified as to what Ford told him on the
Weightman porch. Ford related that she and appellant began arguing about his failure to secure
employment, and that he accused her of having a sexual relationship with another man. The
argument escalated, and appellant knocked a cup of coffee out of her hands. Ford told Canizales that
she moved from room to room to avoid appellant, and that when she tried to leave the house
appellant grabbed her shirt, pulled her back into the house, and threw her on the couch. At this point,
appellant beat her around the face with his hands, then pressed his thumbs into her eyes and his
fingers into her head. Appellant then put his knee into her throat while she was on the couch and
told her that he was going to teach her "about talking that way to him." Appellant then threw Ford
onto the floor of the living room. As she lay on the floor, appellant took a rope and wrapped it
around her neck, put his knee into her back and pulled up on the rope, lifting her torso off the floor. 
When Ford couldn't breathe, she pleaded with appellant, and he released her to get her inhaler. At
this juncture, Ford began screaming. Appellant responded by choking her with his hands. Shortly
thereafter, the police officers arrived at the home. 

 Photographs reflecting Ford's injuries were admitted into evidence. Upon being
shown one of the State's exhibits, Officer Canizales agreed that the injury around her neck was
consistent with having a rope around her neck. 

 William Henry Petty, assistant manager of Victim Services at the Austin Police
Department, came to the scene on Karen Avenue while Ford was still there. He described Ford's
injuries and determined that she needed to be sent to a hospital. He added, without objection, that
an officer at the scene had a rope that the officer said had been used and that Ford's neck injury
appeared to be consistent with strangulation by a rope. Jeanine Helton, another employee of Victim
Services, saw Ford the following day, January 7th. She saw bruising on Ford's face and a very dark
bruising at the base of Ford's neck and above the collar bone. Keith Walker, a homicide detective,
was qualified as an expert, and testified that strangulation by hands or by ligature could cause death. 
 Appellant Davis was the only defense witness. His testimony was similar in many
respects to what Ford told Officer Canizales. Appellant said that the discussion with Ford began
about "me not getting a job"; that Ford began throwing his belongings into the yard which he
repeatedly retrieved; and that he started a shouting march with Ford. Appellant explained that when
Ford started to throw a cup of coffee on him, he slapped the cup from her hand and hit her with an
open hand causing her to fall on the floor. Appellant reported that Ford got up and "ran up on me,"
that he pushed her "maybe a little too hard," and that she fell on the couch. Appellant admitted that
he then pressed his index finger on the side of Ford's head. He was pushing on Ford's temple when
"something just said let her go and I just stopped." Appellant acknowledged that he knew what he
was doing when he hit Ford and knew it hurt her, but afterwards he knew it was a mistake. 

 Appellant related that the rope found in the living room was his. He used it to pull
his lawn mowing equipment from yard to yard. Appellant denied that he had used the rope on Ford
or that he had choked her. He testified that they were just talking when the police officers arrived. 
 On cross-examination, appellant acknowledged that he had been involved in a
romantic relationship with Ford before the incident in question. Appellant stated that, at the time
of the assault he was six feet one inch tall and weighed 198 pounds and that Ford was five feet four
inches tall and weighed 135 pounds. Appellant was aware that Ford suffered from asthma and
diabetes. When appellant was shown State's exhibit no. 2, a photograph of Ford, the record reflects:


Q. And do the injuries in that picture reflect the injuries that you inflicted on her as
you described when you struck her?


A. Yes ma'am. 



 At the conclusion of the guilt/innocence stage of the trial at which Patricia Ford never
testified, the jury found appellant guilty. 


Discussion

 The sole issue presented by this appeal is whether appellant was deprived of his
federal constitutional right of confrontation of witnesses against him and the inclusive right of cross-examination guaranteed by the Sixth Amendment to the United States Constitution. (2) Appellant
contends that the complainant in this aggravated assault case, Patricia Ford, did not testify, and was
not shown to be unavailable to the prosecution, and that there was no prior opportunity for the
appellant to cross-examine her. Appellant urges that the admission of Ford's hearsay statements
incriminating him made to Officer Canizales was an unacceptable substitute for the constitutional
right of confrontation. The alleged error was duly preserved for review. In deciding the
constitutional issue presented, we review the trial court's ruling de novo. Muttoni v. State, 25
S.W.3d 300, 304 (Tex. App.--Austin 2000, no pet.). 

 The Sixth Amendment right of confrontation is a fundamental right and is applicable
to the states by virtue of the Fourteenth Amendment. Pointer v. State, 380 U.S. 400, 403 (1965);
Shelby v. State, 819 S.W.2d 544, 546 (Tex. Crim. App. 1991). (3) 

 While this appeal was pending, (4) the United States Supreme Court handed down its
decision in Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004), which held that, without
exception, testimonial hearsay statements of witnesses absent from trial are admissible over a Sixth
Amendment Confrontation Clause objection only where the declarant is unavailable and where the
defendant has had a prior opportunity to cross-examine the declarant. Crawford, 541 U.S. at ___,
124 S. Ct. at 1368-69. 

 Crawford traced the history of the principle of confrontation from ancient Rome
through eighteenth century Europe and from the colonial period in this country through the 1791
adoption of the Sixth Amendment and the cases decided under it early on. Id., 541 U.S. at ___, 124
S. Ct. at 1354-63. From the historical background, Crawford draws two inferences concerning the
Sixth Amendment Confrontation Clause: (1) the "principal evil" targeted by the clause was the civil
law's historic practice of using ex parte examinations as evidence against the accused; id., 541 U.S.
___; 124 S. Ct. at 1363; and (2) the Framers would not have permitted out-of-court testimonial
statements to be admitted into evidence against the accused unless the witness was unavailable and
the defendant had had a prior opportunity to cross-examine the witness. Id., 541 U.S. at ___, 124
S. Ct. at 1365. The Court concluded that the Confrontation Clause's ultimate goal is to ensure the
reliability of evidence and it demands that reliability be assessed in a particular manner: "by testing
in the crucible of cross-examination." Id., 541 U.S. at ___, 124 S. Ct. at 1370. 

 As explained in Brooks v. State, 132 S.W.3d 702, 707 (Tex. App.--Dallas 2004, pet.
ref'd), the threshold question imposed by Crawford is whether the proffered out-of-court statement
is "testimonial" in nature. Crawford held that the Confrontation Clause applies to those who "bear
testimony" and it stated that "testimony" is typically "[a] solemn declaration or affirmation made for
the purpose of establishing or proving some fact. Crawford, 541 U.S. at ___, 124 S. Ct. at 1364
(quoting N. Webster, an American Dictionary of the English Language (1828)). The Supreme Court 
declined to spell out a comprehensive definition of "testimonial." Id. at 1374. The Court did,
however, identify three kinds of statements that could be properly regarded as testimonial: (1) "ex
parte in-court testimony or its functional equivalent--that is, material such as affidavits, custodial
examinations, testimony that the defendant was unable to cross-examine, or similar pretrial
statements that declarants would reasonably expect to be used prosecutorially," (2) "extrajudicial
statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior
testimony, or confessions," and (3) "statements that were made under circumstances which would
lead an objective witness reasonably to believe that the statement would be available for use at a later
trial." Id. at 1364. Statements taken by police officers in the course of interrogations are also
testimonial. Id. 

 These examples of testimonial statements are not exclusive. The full definition of
testimonial was left to the lower courts at least until the Supreme Court revisits the Crawford
holding. Id. at 1374. The Court did explain that it used the term "interrogation" in "its colloquial,
rather than any technical legal sense." Id. at 1365 n.4. 

 The Crawford court stressed that whether or not a statement was sworn is not a
determinative factor in finding a statement to be testimonial. Id. at 1365-66. A statement is more
likely to be testimonial if the person who heard, recorded, and produced the out-of-court statement
at trial is a government officer. Casual remarks to acquaintances are generally nontestimonial. If
the person obtaining the statement is a governmental employee or police officer carrying out an
investigation or prosecutional functions, the statement is "testimonial." Id. at 1365. 

 Courts across the nation have been confronted with the grueling job of applying
Crawford on a case-by-case basis to determine the full definition of "testimonial." Texas courts like
others had been accustomed to applying the governing test of Ohio v. Roberts, 448 U.S. 56 (1980),
where there was a confrontation challenge to the admissibility of out-of-court statements offered
against the accused. In Roberts, the court discussed the confrontational issues raised by hearsay and
set forth the following test: 


In sum, when a hearsay declarant is not present for cross-examination at trial, the
Confrontation Clause normally requires a showing that he is unavailable. Even then,
his statement is admissible only if it bears adequate "indicia of reliability." 
Reliability can be inferred without more in a case where the evidence falls within a
firmly rooted hearsay exception. In other cases, the evidence must be excluded, at
least absent a showing of particularized guarantees of trustworthiness.



Id. at 66.


 The requirement of unavailability in Roberts was subsequently limited to hearsay
statements made in the course of a prior judicial proceeding. See White v. Illinois, 502 U.S. 346,
353-54 (1992). (5) At least, after Roberts, the relialibility of offered out-of-court statement was tested
when a confrontation challenge was made. Reliability could be demonstrated by one of two means: 
by the presence of a firmly rooted hearsay exception or by the presence of particularized guarantee
of trustworthiness, such that the adversarial testing would be expected to add little, if anything, to
the statement's reliability. Roberts, 448 U.S. at 66; see also Lilly v. Virginia, 527 U.S. 116, 134
(1999); Idaho v. Wright, 497 U.S. 805, 820-21 (1990); Lee v. Illinois, 476 U.S. 530, 545-46 (1986);
Muttoni, 25 S.W.3d at 304-06. 

 The Roberts decision acknowledged that the admission of hearsay against a criminal
defendant implicates the Confrontation Clause. 448 U.S. at 63. Under the Roberts standard,
however, the hearsay was admissible against a defendant if it bore sufficient indicia of reliability. 
Id. at 66. In fact, hearsay was deemed per se reliable if it fell within a firmly rooted exception to the
hearsay rule such as an excited utterance. See White, 502 U.S. at 355 n.8; Guidry v. State, 9 S.W.3d
133, 149 (Tex. Crim. App. 1999). 

 Crawford abrogated Roberts and discarded the "adequate indicia of reliability" test
insofar as it applied to "testimonial hearsay." Crawford, 124 S. Ct. at 1370-73. "Where testimonial
statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands
is the one the Constitution actually prescribes: confrontation." Id. at 1374. 

 The core holding of Crawford is that the Confrontation Clause of the Sixth
Amendment is a rule of procedure, not of evidence. "If there is one theme that emerges from
Crawford, it is that the Confrontation Clause confers a powerful and fundamental right that is no
longer subsumed by the evidentiary rules governing the admissibility of hearsay statements." United
States v. Comer, 389 F.3d 662, 679 (6th Cir. 2004). The constitutional requirement that a
testimonial statement to be subject to cross-examination in criminal cases "does not evaporate when
testimony happens to fall within some broad modern hearsay exception, even if the exception is
sufficient in other circumstances." Crawford, 124 S. Ct. at 1367 n.7. A testimonial statement that
meets the excited utterance exception test and cannot be excluded as hearsay, but this is irrelevant
if the Confrontation Clause applies. Lopez v. State, 888 So. 2d 693, 697 (Fla. App. 1st Dist. 2004). 
Mere reliability is not enough to satisfy the Confrontation Clause where the extrajudicial statements
are of a testimonial nature. United States v. Gonzalez-Marichal, 317 F. Supp. 2d 1200 (S. D. Calif.
2004). 

 In discussing testimonial and nontestimonial hearsay, the Crawford court stated:


Where testimonial hearsay is at issue, it is wholly consistent with the Framers' design
to afford the State flexibility in their development of hearsay law--as does Roberts,
and as would an approach that exempted such statements from Confrontation Clause
scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth
Amendment demands what the common law required: unavailability and a prior
opportunity for cross-examination. 



124 S. Ct. at 1374.


 Thus, under Crawford, the Sixth Amendment Confrontation Clause analysis will
usually turn on the question of whether a particular statement is testimonial or nontestimonial in
nature. The Roberts line of cases seem to be alive and well as to nontestimonial hearsay. Crawford
strongly suggests but does not hold that the admissibility of nontestimonial hearsay is outside the
scope of the Sixth Amendment. 124 S. Ct. at 1373-74. 

 The Texas Court of Criminal Appeals has only briefly addressed a Crawford issue. 
In Woods v. State, 152 S.W.3d 105, 113-114 (Tex. Crim. App. 2004), the court found that a co-defendant's casual "street corner" remarks to acquaintances were admissible as a declaration against
penal interest exception to the hearsay rule, Tex. R. Evid. 803(24) and as to the confrontation issue,
the remarks were nontestimonial in nature under the holding in Crawford. 

 In determining whether a particular out-of-court hearsay statement is testimonial or
nontestimonial in the post-Crawford era, courts in Texas and other jurisdictions have reached
conflicting decisions under the same or similar circumstances. Cf. Wall v. State, 143 S.W.3d 846,
851 (Tex. App.--Corpus Christi 2004, pet. filed) (victim's statement to police shortly after assault
testimonial), with Cassidy v. State, 147 S.W.3d 712, 716 (Tex. App.--Austin 2004, pet. ref'd)
(victim's statement to police at hospital shortly after assault nontestimonial). Key v. State, ___
S.W.3d ___ (No. 12-04-00030-CR), 2005 Tex. App. LEXIS 1573 (Tex. App.--Tyler, Feb. 25, 2005,
no pet.), held that the statements of the nontestifying victim of an assault made to responding officers
at the scene were nontestimonial. Id. at 6-7. Key cited a number of out-of-state cases to support its
conclusion, as well as Gonzalez v. State, 155 S.W.3d 603 (Tex. App.--San Antonio 2004, pet. filed),
and Davis v. State, No. 02-03-305-CR (2005 Tex. App. LEXIS 712) (Tex. App.--Fort Worth 2005,
no pet. h.). Key concluded that the hearsay statements there resulted from an unstructured interaction
between the victim and the police that bore no resemblance to the examples of testimonial hearsay
used in Crawford. 2005 Tex. App. LEXUS 1573, at *4-5. However, Crawford made clear the
examples given were not exclusive. Key did not end its reasoning there. Key supported its
conclusion by finding that the excited utterance exception to the hearsay rule had been satisfied and,
thus, as a matter of law, the statements were nontestimonial. Id. 

 Spencer v. State, No. 14-04-00059-CR, 2005 Tex. App. LEXIS 3162 (Tex.
App.--Houston [14th Dist.] April 28, 2005, confronted a similar issue as in Key and reached the
same conclusion. However, Spencer expressly disagreed with Key's conclusion that all excited
utterances are non-testimonial statements, 2005 Tex. App. LEXIS 3162, at *9. 

 In Wilson v. State, 151 S.W.3d 694, 696-98 (Tex. App.--Fort Worth 2004, pet. filed),
the Court found the unstructured interaction between a nontestifying victim and police at the scene
of a car wreck was nontestimonial. The court of appeals first independently reached this conclusion
before discussing if the same statements were also admissible under the excited utterance exception
to the hearsay rule. Tex. R. Evid. 803(2). 

 There are a number of cases contrary to Key. See Stencil v. United States, 866 A.2d
799, 809 (P. C. Ct. App. 2005) ("Some excited utterances are testimonial, and others are not,
depending on the circumstances."); Lopez, 888 So. 2d at 697 (statement to responding officer
testimonial even though it was excited utterance); People v. Victory, 819 N.E.2d 311 (Ill. App. 3d
Dist. 2004) (victim's statements to police officer at scene testimonial under circumstances); Moody
v. State, 594 S.E.2d 350 (Ga. 2004) (victim's statement to investigating officer at scene shortly after
event testimonial); Lee v. State, 143 S.W.3d 565, 568-71 (Tex. App.--Dallas 2004, pet. filed)
(nontestifying co-defendant's out-of-court statements to police officers at scene of automobile stop
testimonial); United States v. Neilson, 371 F.3d 574 (9th Cir. 2004) (statement by defendant's
girlfriend to an officer during execution of search warrant testimonial); People v. Ruiz, 2004 Cal.
App. Unpub. LEXIS 9691, at *28 (Cal. App. 2d Dist. Oct. 26, 2004) (unpublished) (statement to
responding officer testimonial noting that police officers are trained to obtain statements for potential
use in litigation when responding to potential domestic violence situations); People v. Sisanath, 13
Cal. Rptr. 3d 753 (Cal. App. 2004) (alleged victim's statement to responding officer testimonial). 
Significantly, the Supreme Court has vacated and remanded a case involving "excited utterances"
to a police officer responding to the scene of a crime for further consideration in light of Crawford. 
Siler v. Ohio, 125 S. Ct. 671 (2004), GVD'ing State v. Siler, 2003 Ohio 5749, 2003 Ohio App.
LEXIS 5091 (Ohio Ct. App. Oct. 24, 2003). 

 In Samarron v. State, 150 S.W.3d 701 (Tex. App.--San Antonio 2004, pet. filed),
the witness to a murder made no statement at the scene but gave a written statement at the police
station. The witness did not testify. His written statement was admitted as an "excited utterance." 
The court of appeals held that the statement was "testimonial" and that it was offered in violation
of the Confrontation Clause. Id. at 705-08. The error was not harmless. Id. at 708. (6) 

 In Hammon v. State, 809 N.E.2d 945 (Ind. Ct. App. 2004), the court found difficulty
in characterizing any "excited utterance" exception to the hearsay rule as "testimonial" within the
meaning of Crawford. The court stated:


We further note that the very concept of an "excited utterance" is such that it is
difficult to perceive how such a statement could ever be "testimonial." "The
underlying rationale of the excited utterance exception is that such a declaration from
one who has recently suffered an overpowering experience is likely to be truthful." 
Hardiman v. State, 726 N.E.2d 1201, 1204 (Ind. 2000). To be admissible, an excited
utterance "must be unrehearsed and made while still under the stress of excitement
from the startling event." Id. "The heart of the inquiry is whether the declarants had
the time for reflection and deliberation." Id. An unrehearsed statement made
without time for reflection or deliberation, as required to be an "excited utterance,"
is not "testimonial" in that such a statement, by definition, has not been made in
contemplation of its use in a trial. See Crawford, 124 S. Ct. at 1364. 



Hammon, 809 N.E.2d at 952-53; see also Fowler v. State, 809 N.E.2d 960, 964 (Ind. Ct. App. 2004), 
transfer granted, 2004 Ind. LEXIS 1030 (Ind. Dec. 9, 2004). 

 Other courts have rejected the Hammon-Fowler analysis as being more restrictive
than contemplated by the Supreme Court in Crawford. See People v. Kilday, 20 Cal. Rptr. 161, 173
n.9, 123 Cal. App. 406, 418, review granted, 2005 Cal. LEXIS 565 (Cal. Jan. 19, 2005). In Lopez
v. State, 888 So. 2d at 699, the court disagreed with the Hammon-Fowler approach that excited
utterances can never be testimonial. The court stated:


While this argument has some appeal at least on the surface, we do not think that
excited utterances can be automatically excluded from the class of testimonial
statements.


In our view, the findings necessary to support a conclusion that a statement was an
excited utterance do not conflict with those that are necessary to support a conclusion
that it was testimonial. A statement made in the excitement of a startling event is
likely to be more reliable given the fact that the declarant had little time to make up
a story. But, under Crawford, reliability has no bearing on the question of whether
a statement was testimonial. Some testimonial statements are reliable and others are
not. 



 After discussing cases involving statements by declarants to family members or
friends, the Lopez court stated:


In contrast, a startled person who identifies a suspect in a statement made to a police
officer at the scene of a crime surely knows that the statement is a form of accusation
that will be used against the suspect. In this situation, the statement does not lose its
character as a testimonial statement merely because the declarant was excited at the
time it was made.


These principles lead us to conclude that the statement at issue was a testimonial
statement. While it is true that Ruiz was nervous and speaking rapidly, he surely
must have expected that the statement he made to Officer Gaston might be used in
court against the defendant. He knew that Gaston was a policeman who was on the
scene in an official capacity to investigate a reported crime. Even in his excitement,
Ruiz knew that he was making a formal report of the incident and that his report
would be used against the defendant. 



Id. at 699-700. 


 The instant case was one of the domestic violence variety where the complainant did
not testify. It has been estimated that between eighty and ninety percent of domestic violence
complainants recant their accusations or refuse to cooperate with prosecutors. See Tom Lininger,
Evidentiary Issues in Federal Prosecution of Violence Against Women, 36 Ind. L. Rev. 687, 709 n.76
(2003). Thus, prosecutors try many domestic violence cases without the complainant's testimony. 
They often rely upon evidence of excited utterances or other hearsay exceptions. Cf. People v.
Moscat, 3 Misc 3d 739, 777 N.Y.S.2d 875, 878 (N.Y. Crim. Court 2004) ("because complainants
in domestic violence cases often do not appear for trial, prosecutors have in recent years tried to
fashion 'victim less' prosecutions"). The proper interpretation of Crawford can have a great impact
upon trials in this area.

 In the instant case, there can be little question from the facts that the complainant's
statements to Officer Canizales shortly after the event were admissible under the "excited utterances"
exception to the hearsay rule. See Tex. R. Evid. 803(2). The complainant Ford was crying, sobbing,
and appeared hysterical at the time. But the fact that evidence is admissible under an excited
utterance hearsay exception does not mean that it is ipso facto nontestimonial hearsay outside the
scope of the Confrontation Clause and admissible into evidence. Each case must be examined on
its facts to determine if the evidence is testimonial and controlled by Crawford. 

 Officers Cortez and Canizales responded to a 911 call. When they arrived at the
scene, they could easily be characterized as "responding officers." How long did that label apply? 
The officers found appellant and Ford in a house from which they heard screams. Ford left the house
at Cortez's instructions. As she did, she stated to the officers: "[H]e tried to kill me," a form of
accusation and yet a plea for assistance. Appellant was taken into custody. It was determined the
other man in the house had nothing to do with the assault. Ford had reached the porch of a
neighbor's house across the street. The scene was apparently secured. Officer Cortez related that
Officer Canizales went across the street to get Ford's "side of the story." Canizales testified that his
purpose in "interviewing" Ford was to determine what happened and who committed the assault. 
He further stated that the "story he got from her was the result of questioning." At one point,
however, he stated that he simply asked what happened and she told him. Had Canizales at this
point become an investigating officer at the scene? From the record, we know that at this time
Canizales took photographs of Ford which were introduced into evidence. Canizales also made an
offense report, as he was trained and required to make, that was used at trial to refresh his memory
as to the details of what Ford told him. (7) Frequent references during trial were made to page six of
the offense report. Other employees of the police department were summoned to the scene as well
as an ambulance--steps normally taken under similar circumstances, not only to assist the
complainant but with an eye to potential prosecution. 

 The oral statements made by Ford to the uniformed Officer Canizales identified
appellant and then, in a series of accusations against appellant, detailed blow by blow the assault
made upon her. Surely, a reasonable 51-year-old declarant like Ford would have known that her
accusations made to a uniformed police officer would be passed on to prosecutorial authorities to
be used against appellant. Ford's statements may serve either or both of two primary objectives--to
gain immediate official assistance in terminating an exigent situation and to provide information to
aid investigation and possible prosecution arising from the situation. Merely because a declarant is
excited, the statements made do not lose their character as testimonial statements subject to the
Confrontation Clause. 

 In the instant case, it is difficult to draw a definitive line between testimonial and
nontestimonial hearsay evidence developed in this pre-Crawford trial in order to reach the proper
disposition of this appeal. We find that we do not have to do so. 


Conclusion


 If, in the instant case, the objected-to hearsay was nontestimonial, then no
Confrontation Clause error is presented. If, on the other hand, the hearsay was testimonial, then
Crawford applies, and constitutional error occurred. A Confrontation Clause violation is subject to
a harmless error analyses. See Lilly v. Virginia, 527 U.S. 116, 140 (1999); Coy v. Iowa, 487 U.S.
1012, 1021 (1988). We must reverse the conviction when Confrontation Clause error is presented
unless we can determine beyond a reasonable doubt that the error did not contribute to the
conviction. See Chapman v. California, 386 U.S. 18, 24 (1967); Mendez v. State, 56 S.W.3d 880,
893 (Tex. App.--Austin 2001, pet. ref'd); see also Tex. R. App. P. 44.2(a). In Shelby v. State, 819
S.W.2d 544, 547 (Tex. Crim. App. 1991), the Texas Court of Criminal Appeals adopted the Supreme
Court's analysis in Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986), for assessing harm in
Confrontation Clause cases. See also Samarron, 150 S.W.3d at 707; DeLaRosa v. State, 961 S.W.2d
495, 499 (Tex. App.--San Antonio 1997, no pet.) (applying Van Arsdall factors). The Van Arsdall
analysis is a three-pronged test. First, the reviewing court must assume that the damaging potential
of the cross-examination was fully realized. Second, with that assumption in mind, the court must
review the error in connection with the following factors: the extent for cross-examination otherwise
permitted; the importance of the witness's testimony in the State's case; whether the testimony was
cumulative; the presence or absence of evidence corroborating or contradicting material points of
the witness's testimony; and the overall strength of the State's case. Finally, in light of the first two
prongs, the court determines if the error was harmless beyond a reasonable doubt. Van Arsdall, 475
U.S. at 684; see also Shelby, 819 S.W.2d at 547; Samarron, 150 S.W.3d at 707. (8)

 In applying the Van Arsdall factors to the facts of the instant case, we find that the
hearsay testimony involved was vital to the State's case. Without it, the State could not have
established the elements of the offense. However, appellant made a judicial confession
corroborating much of the declarant's statements to Officer Canizales. Appellant confirmed the
background evidence of his relationship with Ford, the declarant. He admitted that he started the
shouting match and assaulted the declarant and acknowledged that he inflicted the injuries shown
in a photograph of the declarant. While, appellant's version of the assault did not exactly match that
of the declarant as revealed by Officer Canizales's testimony, the evidence clearly supported the
general verdict of the jury. 

 If the complained-of hearsay was testimonial in nature, applying the Van Arsdall
analyses, we conclude beyond a reasonable doubt that the error did not contribute to the conviction
or punishment assessed. There is no reasonable likelihood that the error, if any, materially affected
the jury's deliberations. See Westbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). 

 Appellant's sole point of error is overruled. The judgment is affirmed. 



 

 John F. Onion, Jr., Justice

Before Chief Justice Law, Justices Puryear and Onion*

Affirmed

Filed: May 19, 2005

Publish




* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1.   Appellant raises only a federal constitutional right of confrontation issue. He makes no
claim of such right under article I, section 10 of the Texas Constitution in his brief. See Tex. R. App.
P. 38.1(h). Thus, appellant has not claimed that the state constitution provides greater or different
protection than the federal constitution. See Lagrone v. State, 942 S.W.2d 602, 613 (Tex. Crim.
App. 1997); Wall v. State, 143 S.W.3d 846, 849 (Tex. App.--Corpus Christi 2004, pet. filed); Hall
v. State, 139 S.W.3d 418, 421 (Tex. App.--Fort Worth 2004, no pet.). We will not address the state
constitutional issue.
2.   The purpose of confrontation is to ensure reliability by means of the oath, to expose the
witness to cross-examination, and to permit the trier of fact to assess credibility. California v.
Green, 399 U.S. 149, 158 (1970).
3.   By virtue of the nature of our inquiry, we are guided and bound by the decision and
reasoning of the United States Supreme Court. U.S. Const. art. VI, cl. 2; see also McCulloch v.
Maryland, 17 U.S. (4 Wheat) 316, 427, 4 L. Ed. 579 (1819); Guzman v. State, 85 S.W.3d 242, 258
n.24 (Tex. Crim. App. 2002). 
4.   The Supreme Court's retroactivity analysis is not an issue here as appellant Davis's case
is still on direct appeal. His conviction is not yet final. See Teague v. Lane, 489 U.S. 288, 310
(1989); see generally, Beard v. Banks, ___ U.S. ___, 124 S. Ct. 2504, 2510; 159 L. Ed. 2d 494
(2004).
5.   The decision in White v. Illinois, 512 U.S. 346 (1992), treating the hearsay exception for
spontaneous declarations as a "firmly rooted" one for the purpose of applying the reliability test of
Roberts [448 U.S. 56, 66 (1980)] gave leeway to prosecutors and courts to try cases by introducing
statements made in 911 calls and to responding officers (as evidence of the truth of the matter
asserted), even if the declarant did not testify.
6.   See Jahanian v. State, 145 S.W.3d 346, 350 (Tex. App.--Houston [14th Dist.] 2004, no
pet.) (finding that written statement given during police investigation after witness became suspect
was testimonial); see also Gutierrez v. State, 150 S.W.3d 827, 830 (Tex. App.--Houston [14th Dist.]
2004, no pet.) (holding videotaped statement testimonial).
7.   It is not clear from the record whether Officer Canizales took notes while talking to Ford.
8.   The Van Arsdall factors in the second prong of the analyses were developed in light of the
particular facts there presented. Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986). Like factors
in other contexts, the Van Arsdall factors do not always present a "one shoe fits all" analysis easily
applied to every case.


 In Hale v. State, 139 S.W.3d 418, 422 (Tex. App.--Fort Worth 2004, pet. filed), the court
recognized the Van Arsdall factors but did not apply them because there was no trial, only a guilty
plea before the trial court. The Hale court reversed the aggravated sexual assault convictions in the
light of Crawford v. Washington, 124 S. Ct. 1354 (2004), because the trial court erred in denying a
motion to exclude the written testimonial statement of an accomplice who refused to testify at trial. 
After the pretrial ruling, appellant entered pleas of guilty. The Court of Appeals could not determine
beyond a reasonable doubt from the record before it that the pretrial ruling did not contribute to the
guilty pleas and the resulting convictions. The causes were reversed and remanded. Id. at 422. 


 In Scott v. State, No. 03-03-00109-CR, 2005 Tex. App. LEXIS 2168 (Tex. App.--Austin
March 24, 2005), a capital murder case, this Court found the trial court erred in admitting the written
testimonial statement of a non-testifying co-defendant over a Confrontation Clause objection. The 

majority found the error harmless in an analysis under Rule 44.2(a) of the Texas Rules of Appellate
Procedure (incorporating the holding in Chapman v. California, 380 U.S. 18, 24 (1967)), and the
factors set forth in Harris v. State, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989); Scott, 2005 Tex.
App. LEXIS 2168, at *52-69. There was no reliance upon Van Arsdall.