**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 10-50001 |
| Plaintiff - Appellee, | D.C. No. 2:05-cr-00235-CBM-10 |
| v. | MEMORANDUM[*] |
| RICHARD CHENY HERRING, | |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Central District of California
Consuelo B. Marshall, Senior District Judge, Presiding

Argued and Submitted June 10, 2011
Pasadena, California

Before: B. FLETCHER, and N.R. SMITH, Circuit Judges, and R. BREWSTER,
District Judge.[**]

Richard Cheny Herring, a federal prisoner serving a 110-month sentence

following his jury conviction for conspiracy to distribute more than 50 grams of

---

[*]      This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**]      The Honorable Rudi M. Brewster, Senior United States District Judge
for the Southern District of California, sitting by designation.

methamphetamine and possession with the intent to distribute more than 50 grams of methamphetamine, appeals three aspects of his criminal proceedings. We have jurisdiction pursuant to 28 U.S.C. §1291. We affirm.

First, the district court properly denied the motion to suppress the methamphetamine found in the car Herring was driving. The collective knowledge of the law enforcement officers, who had been watching the activity in and around the main house and listening to wiretaps of the telephone conversations, provided reasonable suspicion to believe that Herring had narcotics in the car. United States v. Hensley, 469 U.S. 221, 232 (1985); United States v. Burkett, 612 F.3d 1103, 1107 (9th Cir. 2010). In any event, (1) the traffic stop was proper based on the seat belt violations by Herring and the child passenger[1]; (2) the additional brief questioning was reasonable, Muehler v. Mena, 544 U.S. 93, 101 (2005); United States v. Turvin, 517 F.3d 1097, 1101-04 (9th Cir. 2008); United States v. Mendez, 476 F.3d 1077, 1080 (9th Cir. 2007); and (3) Herring consented to the search.

---

[1]Herring questions the credibility of the police officer's testimony that he saw Herring was not wearing his seat belt. As the government notes, Herring cannot challenge the traffic stop for the first time on appeal. United States v. Murillo, 288 F.3d 1126, 1135 (9th Cir. 2002). Even if the argument was not waived, no evidence contradicts the officer's observation, particularly since Herring was in fact cited for not wearing a seat belt. United States v. Ibarra, 345 F.3D 711, 713-15 (9th Cir. 2003).

Second, there was sufficient evidence to convict Herring of conspiring to distribute methamphetamine with the members of the Hard Times Gang. The taped conversations show that Herring was more than a one-time buyer. Herring acted as both a supplier and a distributor of methamphetamine. The gang's leader would not have called Herring to obtain a cutting agent to dilute a product that Herring would buy. This communication contemplated a sale to a stranger. The jury could draw a reasonable inference that Herring's ready supply of methamphetamine and dilutant showed he was involved in the conspiracy to distribute drugs to others. Moreover, Herring knew how to send a courier to make a delivery and he knew whom to meet in the parking lot to pick up methamphetamine. Though Herring has cognitive limitations, he was familiar with the code words used in the taped conversations, which were interpreted and decoded for the jury by an expert witness. These facts suggest an ongoing involvement with the overall scheme.

Third, the district court did not commit clear error by finding that Herring was not entitled to the acceptance of responsibility adjustment. Herring was not willing to plead guilty to the conspiracy count and he never admitted all of his criminal conduct. United States v. Schales, 546 F.3d 965, 976 (9th Cir. 2008). He

-3-

wanted a plea bargain on his own terms.[2] <u>United States v. Nielsen</u>, 371 F.3d 574, 579, 582-83 (9th Cir. 2004) (defendant's offer to enter conditional guilty plea does not entitle him to adjustment). When the sentencing court invited Herring to speak, he did not express remorse or contrition. <u>Id</u>. at 582.

AFFIRMED.

---

[2]At oral argument, counsel emphasized that Herring "never" received a copy of the plea offer. The record does not support this statement. When Herring did not respond to the first offer by November 2006, the government extended the deadline to December 7, 2006. Herring explained his reasons for not signing the plea agreement during the December 6, 2006 status conference – before the deadline passed.